| | |
|---|---|
| SHARON MANGERSON, Independent Executor ) | |
| Of the Estate of JOHN WRANA, JR., Deceased, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14 CV 4661 |
| ) | |
| VILLAGE OF PARK FOREST, ) | Honorable Amy J. St. Eve |
| an Illinois Municipal Corporation, ) | Magistrate Judge Jeffrey J. Gilbert |
| MICHAEL BAUGH, individually, ) | |
| CRAIG TAYLOR, individually, ) | **JURY TRIAL DEMANDED** |
| LLOYD ELLIOT, individually, ) | |
| CHARLIE HOSKINS, individually, ) | |
| and MITCH GREER, individually, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND**
**TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Village of Park Forest, Michael Baugh, Craig Taylor, Lloyd Elliot, Charlie Hoskins and Mitch Greer, by their attorneys, THE SOTOS LAW FIRM, P.C., and for its Answer, Affirmative Defenses and Jury Demand to Plaintiff's Second Amended Complaint, state the following:

## INTRODUCTION

1.      This is an action brought pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983, 1988 and Illinois state law. Plaintiff, Sharon Mangerson, is the Independent Executor of the Estate of John Wrana, Jr., Deceased. She was also Mr. Wrana's stepdaughter and caretaker. Plaintiff brings this action for the violations and deprivations of her decedent's constitutional rights, his injuries, wrongful death, survival rights and applicable Illinois state law claims. At all relevant times, defendants Commander Baugh, Corporal

Elliot, Police Officers Taylor, Hoskins and Greer were working and acting under the color of law as police officers for defendant Park Forest under the direction and command of Clifford Butz, the Park Forest Chief of Police. On July 26, 2013, John Wrana, Jr., was twelve days shy of his 96th birthday and a resident at the Victory Centre of Park Forest Assisted Living Center located in Park Forest, Illinois ("Victory Centre"). On that date, Mr. Wrana was alone in his room, suffering from what the facility's staff believed were symptoms indicative of a urinary tract infection in an elderly person. The defendant police officers, under the direct and on-scene supervision and command of defendant Commander Baugh, violated Mr. Wrana's constitutional rights by unlawfully entering his residence and causing, allowing and/or ordering the firing of five rounds of bean bag cartridges from a 12-gauge shotgun within a distance of approximately only six to eight feet from Mr. Wrana, far less than the distance allowed for discharging that shotgun, and, consequently, savagely wounding and killing Mr. Wrana. Mr. Wrana bled to death as a result of the shotgun wounds inflicted upon him by defendants. The Cook County Medical Examiner ruled that Mr. Wrana's death was a homicide caused by blunt force trauma to his abdomen as a result of shots fired from a bean bag shotgun.

**ANSWER:** Defendants admit this action is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983, 1988 and Illinois state law for alleged violations and deprivations of Mr. Wrana's constitutional rights, injuries, wrongful death and survival rights. Defendants admit Plaintiff, Sharon Mangerson, is the Independent Executor of the Estate of John Wrana, Jr., Deceased and was also Mr. Wrana's stepdaughter. Defendants lack knowledge or information sufficient to form a belief as to the truth of the averment she was Mr. Wrana's caretaker. Defendants admit at all relevant times, Defendants Baugh, Elliot, Taylor, Hoskins and Greer were working and acting under color of law as police officers for Defendant Village of Park Forest. Defendants further admit as chief of police, Chief Clifford Butz was Defendants Baugh, Elliot, Taylor, Hoskins and Greer's commanding officer but Defendants deny they were acting under the direction of Chief Butz at the time of the incident. Defendants admit John Wrana Jr. was born on August 7, 1917 and on July 26, 2013 was a resident at the Victory Centre of Park

Forest Assisted Living Center ("Victory Centre") located in Park Forest, Illinois. Defendants admit at times on July 26, 2013, Mr. Wrana was alone in his room but are without knowledge or information sufficient to form a belief as to the truth of the averment he was "suffering from what the facility's staff believed were symptoms indicative of a urinary tract infection in an elderly person." Defendants admit the Defendant Police Officers were at times under the direct and on-scene supervision and command of Defendant Baugh. Defendants also admit the Cook County Medical Examiner ruled Mr. Wrana's death was a homicide caused by blunt force trauma. Defendants deny the remaining averments in paragraph 1.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367. Venue is

proper in this District under 28 U.S.C. § 1391, as on information and belief, all or most of the parties

reside in this Judicial District, and the events giving rise to the claims asserted herein occurred in

this Judicial District.

**ANSWER:**     Defendants admit jurisdiction over Plaintiff's federal claims is proper under 28 U.S.C. §§ 1331 and 1343 and the court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1391. Defendants further admit all or most of the parties reside in this judicial district and the events giving rise to this Complaint occurred in this judicial district but deny the events occurred in the manner set forth by Plaintiff.

## PARTIES

3.      Plaintiff, SHARON MANGERSON, is a resident of Illinois and this Judicial District,

and is the lawfully appointed Independent Executor of the Estate of JOHN WRANA, JR., Deceased,

to whom Letters of Office have been issued in that capacity by the Circuit Court of Cook County,

Illinois, Court Case Number 2013 P 004713.

**ANSWER:**     Defendants admit Plaintiff Sharon Mangerson is a resident of Illinois and this judicial district and was appointed independent executor of the estate of John Wrana, Jr, Deceased. Defendants further admit letters of office have been issued to Plaintiff Mangerson in that capacity by the Circuit Court of Cook County, Illinois, case

number 2013 P 004713. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment the appointment was lawful.

4.     Defendant VILLAGE OF PARK FOREST, at all relevant times, was an Illinois municipal corporation, duly chartered and organized under the laws of the State of Illinois, located entirely within this Judicial District.

**ANSWER:**     Defendants admit the averments in paragraph 4.

5.     Defendant MICHAEL BAUGH, was at all relevant times, a sworn PARK FOREST Police Officer and Commander of Police, employed by and working for defendant PARK FOREST. Defendant Commander Baugh engaged in the conduct complained of under color of law and in the scope of his employment as agent and representative of defendant PARK FOREST. Defendant Commander Baugh is sued in his individual capacity.

**ANSWER:**     Defendants admit Defendant Michael Baugh was at all relevant times a sworn Park Forest police officer and commander of police, employed by and working for Defendant Village of Park Forest and was acting under color or law and in the scope of his employment as an agent of Defendant Village of Park Forest. Defendants further admit Defendant Baugh is sued in his individual capacity. Defendants deny the remaining averments in paragraph 5.

6.     Defendant CRAIG TAYLOR, was at all relevant times, a sworn PARK FOREST Police Officer employed by and working for defendant PARK FOREST. Defendant Taylor engaged in the conduct complained of under color of law and in the scope of his employment as agent and representative of defendant PARK FOREST. Defendant Taylor is sued in his individual capacity.

**ANSWER:**     Defendants admit Defendant Craig Taylor was at all relevant times a sworn Park Forest police officer employed by and working for Defendant Village of Park Forest and was acting under color of law and in the scope of his employment as an agent of Defendant Village of Park Forest. Defendants further admit Defendant Taylor is sued in his individual capacity. Defendants deny the remaining averments in paragraph 6.

7.     Defendant LLOYD ELLIOT, was at all relevant times, a sworn PARK FOREST Police Officer and Corporal of Police, employed by and working for defendant PARK FOREST. Defendant Corporal Elliot engaged in the conduct complained of under color of law and in the scope of his employment as agent and representative of defendant PARK FOREST. Defendant Corporal Elliot is sued in his individual capacity.

**ANSWER:**     Defendants admit Defendant Lloyd Elliot was at all relevant times a sworn Park Forest police officer and corporal of police employed by and working for Defendant Village of Park Forest and was acting under color of law and in the scope of his employment as an agent of the Defendant Village of Park Forest. Defendants further admit Defendant Elliot is sued in his individual capacity. Defendants deny the remaining averments in paragraph 7.

8.     Defendant CHARLIE HOSKINS was at all relevant times, a sworn PARK FOREST Police Officer, employed by and working for defendant PARK FOREST. Defendant Hoskins engaged in the conduct complained of under color of law and in the scope of his employment as agent and representative of defendant PARK FOREST. Defendant Hoskins is sued in his individual capacity.

**ANSWER:**     Defendants admit Defendant Charlie Hoskins was at all relevant times a sworn Park Forest police officer employed by and working for Defendant Village of Park Forest and was acting under color of law and in the scope of his employment as an agent of Defendant Village of Park Forest. Defendants further admit Defendant Hoskins is sued in his individual capacity. Defendants deny the remaining averments in paragraph 8.

9.     Defendant MITCH GREER, was at all relevant times, a sworn PARK FOREST Police Officer, employed by and working for defendant PARK FOREST. Defendant Greer engaged in the conduct complained of under color of law and in the scope of his employment as agent and representative of defendant PARK FOREST. Defendant Greer is sued in his individual capacity.

**ANSWER:**     Defendants admit Defendant Mitch Greer was at all relevant times a sworn Park Forest police officer employed by and working for Defendant Village of Park Forest

and was acting under color of law and in the scope of his employment as an agent of Defendant Village of Park Forest. Defendants further admit Defendant Greer is sued in his individual capacity. Defendants deny the remaining averments in paragraph 9.

## FACTUAL BACKGROUND

**The Brutal Homicide of 95 Year Old John Wrana, Jr., by Defendants Park Forest Police Officers.**

10. On Friday, July 26, 2013, Plaintiff's decedent, JOHN WRANA, JR., was over 95 years old, with a the birth year of 1917. He was a resident of room 206, a private room, at the Victory Centre of Park Forest Assisted Living Center, a senior citizen assisted-living residence located at 101 Main Street, Park Forest, Illinois ("Victory Centre"). Despite his advanced age, Mr. Wrana was in good mental health, but he suffered from limited mobility and required either a cane or a walker to stand up, support him, and to walk.

**ANSWER:** Defendants admit on Friday, July 26, 2013, John Wrana, Jr. was 95 years old, with a birth year of 1917. Defendants admit Wrana was a resident of room 206 at Victory Centre, which is a senior citizen assisted-living residence located at 101 Main Street, Park Forest, Illinois. Defendants deny Wrana suffered from limited mobility and required either a cane or walker to stand up, support him, and to walk. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 10.

11. On the aforesaid date and time, the Victory Centre staff members believed that Mr. Wrana was suffering from symptoms indicative of a urinary tract infection in an elderly person, including a sudden onset of strange and uncharacteristic behavior. Victory Centre staff members were attempting to have Mr. Wrana transported by personnel from Bud's Ambulance Service, a private company, to the hospital for evaluation and treatment.

**ANSWER:** Defendants admit on July 25, 2013, Victory Centre staff members attempted to have Mr. Wrana transported by personnel from Bud's Ambulance Service, a private company, to the hospital for psychological evaluation and treatment. Defendants are

6

without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 11.

12.     However, Mr. Wrana did not want to be removed from his residence and taken anywhere for treatment. After Mr. Wrana refused to be transported by Bud's Ambulance personnel, a Victory Centre staff member called 911 for assistance from the PARK FOREST police department in transporting Mr. Wrana.

**ANSWER:**    Defendants admit after Mr. Wrana refused to be transported by Bud's Ambulance personnel, a Victory Centre staff member called 911 for assistance from the Park Forest Police Department. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 12.

13.     Defendants Hoskins and Greer were first to respond and arrive at Victory Centre. They spoke to Mr. Wrana, who was alone in his room. Defendants Hoskins and Greer were unable to gain Mr. Wrana's cooperation and he refused to be transported. They then contacted defendant Corporal Elliot and requested his assistance at the scene.

**ANSWER:**    Defendants admit the averments in paragraph 13.

14.     All civilians, the Victory Centre staff members, and the Bud's Ambulance personnel were moved far away from Mr. Wrana's room, down the corridor and on the opposite end of the floor. Mr. Wrana remained in his room alone with the door closed. There were no persons other than defendant PARK FOREST police officers inside, outside, or near Mr. Wrana's room once the defendant police officers had contact with Mr. Wrana.

**ANSWER:**    Defendants admit at a certain point in time, Victory Centre staff members and Bud's Ambulance personnel were moved down the hallway away from Mr. Wrana's room. Defendants admit Mr. Wrana remained in his room alone with the door closed. Defendants deny the remaining averments in paragraph 14.

15.     When defendant Corporal Elliot arrived, Mr. Wrana was still alone in his room. Corporal Elliot entered the room using a key that he received from the staff and opened the closed

and locked door. The lighting condition in the room was completely adequate. Corporal Elliot spoke with Mr. Wrana and then left the room and contacted defendant Commander Baugh, who was the PARK FOREST Police Department on-duty Commander, to come to the scene at Victory Centre with a police ballistic shield.

**ANSWER:**    Defendants admit when Defendant Corporal Elliot arrived, Mr. Wrana was alone in his room. Defendants further admit after knocking and receiving no response, Defendant Elliot used a key he received from the Victory Centre staff to enter Wrana's room. Defendants admit the lighting was adequate enough for Defendant Elliot to see Wrana standing in the room holding a knife over his head. Defendants admit Defendant Elliot attempted to speak to Wrana and left Wrana's room after Wrana began advancing toward Defendants Elliot, Greer and Hoskins while telling Defendant Elliot to leave or he would throw the knife at Defendant Elliot and cut him. Defendants admit upon leaving the room, Defendant Elliot contacted Defendant Commander Baugh who was on duty at the time, and asked Baugh to respond to Victory Centre with a police ballistic shield. Defendants deny the remaining averments in paragraph 15.

16.    Defendant Commander Baugh, in turn, contacted defendant Taylor and directed Taylor to also respond to the scene and to bring a weapon known as a "less lethal" shotgun to Victory Centre. The shotgun is a 12 gauge weapon which expels projectiles loaded with bean bags containing lead shot.

**ANSWER:**    Defendants admit Defendant Commander Baugh contacted Defendant Taylor and directed Defendant Taylor to respond to the scene at Victory Centre with a weapon known as a "less lethal" shotgun. Defendants admit the weapon is a 12-gauge shogun which expels Super-Sock 12 gauge bean bag cartridges. Defendants deny the remaining averments in paragraph 16.

17.    Defendant Commander Baugh arrived at Victory Centre with a police ballistic shield and a Taser. The Taser and ballistic shield were issued by defendant PARK FOREST. Commander Baugh was in charge of the operation and supervised the actions of all the defendant police officers.

**ANSWER:**    Defendants admit the averments in paragraph 17.

18.     Defendant Taylor also arrived at Victory Centre with the PARK FOREST Police Department's 12 gauge "less lethal" shotgun. The shotgun was loaded with seven live rounds of cartridges containing bean bags. The shotgun was issued by defendant PARK FOREST.

**ANSWER:**     Defendants deny the shotgun was loaded with seven "live rounds" of cartridges containing bean bags but admit the shotgun was loaded with seven Super-sock bean bag cartridges. Defendants admit the remaining averments in paragraph 18.

19.     Defendant Corporal Elliot briefed defendant Commander Baugh. Commander Baugh had a conversation with Mr. Wrana through the closed door to Mr. Wrana's room. Mr. Wrana was inside his room alone with the door closed and presented no threat to others. All civilians remained far removed from the room down the hallway on the other side of the floor shielded by the five armed defendant police officers who were outside Mr. Wrana's room.

**ANSWER:**     Defendants admit Defendant Corporal Elliot briefed Defendant Commander Baugh. Defendants further admit Mr. Wrana was inside his room alone with the door closed. Defendants deny the remaining averments in paragraph 19.

20.     At all relevant times, Mr. Wrana was alone in his private residence and had committed no crime by refusing to be transported to the hospital. Defendants were without lawful authority to enter his residence, and there was no immediate lawful reason to implement any police action against Mr. Wrana, including the use of police tactical intervention.

**ANSWER:**     Defendants deny the averments in paragraph 20.

21.     No further attempt to talk to Mr. Wrana was made by defendants. Further, defendants prohibited any staff members from Victory Centre, who were familiar with and had cared for Mr. Wrana, from attempting to intervene and assist in resolving the transport situation.

**ANSWER:**     Defendants deny the averments in paragraph 21.

22.     Instead, defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer gathered and conferred together and formulated a plan within minutes of Commander Baugh's and Taylor's arrival at Victory Centre.  The plan was to re-enter Mr. Wrana's room and seize him by force with the use of: (1) Commander Baugh's ballistic shield, (2) Commander Baugh's Taser, (3) Officer Taylor's bean bag shotgun and (4) Corporal Elliot's loaded handgun.

**ANSWER:**     Defendants deny the averments in paragraph 22.

23.     Defendant Commander Baugh instructed defendant Taylor to stand next to Commander Baugh with the shotgun ready to deploy if the Taser was ineffective in controlling Mr. Wrana. Defendant Corporal Elliot was behind defendants Commander Baugh and Taylor with his PARK FOREST departmentally issued handgun "deployed as lethal cover" in the private residence of 95 year old Mr. Wrana.  Defendants Hoskins and Greer, who were also armed, followed inside the room from behind.

**ANSWER:**     Defendants admit Defendant Elliot stood behind Defendants Baugh and Taylor. Defendants admit Defendant Elliot possessed a Park Forest departmentally issued handgun which he deployed as lethal cover against Mr. Wrana who was 95-years old and standing in his residence with a knife.  Defendants further admit Defendants Hoskins and Greer were also armed but deny their weapons were deployed. Defendants admit Defendants Hoskins and Greer followed Defendants Baugh, Taylor and Elliot inside the room after Mr. Wrana dropped the knife.  Defendants deny the remaining averments in paragraph 23.

24.     No other viable options to de-escalate and resolve the matter of Mr. Wrana's refusal to be removed were considered or ever attempted. Defendants never allowed for, or attempted to confer with, any person familiar with geriatric patients or behavior in deciding how to resolve the situation.

**ANSWER:**     Defendants deny the averments in paragraph 24.

25.     Defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer executed their plan to seize Mr. Wrana by force.  Commander Baugh, without lawful authority to enter, opened the door to Mr. Wrana's room where Mr. Wrana was alone and defendants entered Mr. Wrana's residence.  Commander Baugh held the ballistic shield and his Taser.  Commander Baugh deployed his departmentally issued Taser at Mr. Wrana and fired the Taser.  The Taser failed to make contact with Mr. Wrana.

**ANSWER:**     Defendants admit Commander Baugh opened the door to Mr. Wrana's room where Mr. Wrana was alone but deny all defendants immediately entered the residence.  Defendants admit Commander Baugh held the ballistic shield and his Taser.  Defendants admit when Mr. Wrana refused verbal commands and continued to threaten officers with the knife, Commander Baugh attempted to deploy his department issued Taser but deny the Taser fired properly.  Defendants admit the Taser failed to make contact with Mr. Wrana.  Defendants deny the remaining averments in paragraph 25.

26.     At that time, each of the other defendant police officers was also armed with a departmentally issued Taser. None of the other defendant police officers attempted to use their Tasers to resolve the encounter with Mr. Wrana with non-lethal force.

**ANSWER:**     Defendants admit the averments in paragraph 26.

27.     Instead, defendant Taylor immediately deployed his "less lethal" shotgun directly at Mr. Wrana and fired five rounds within just a few seconds at Mr. Wrana, striking and wounding him in his abdomen, chest and arm. Taylor fired the five rounds from his shotgun from a distance of only approximately six to eight feet from Mr. Wrana.

**ANSWER:**     Defendants admit Defendant Taylor fired a total of five rounds from his less lethal shotgun directly at Mr. Wrana from a distance of approximately six to eight feet, striking and wounding Mr. Wrana in the abdomen, chest and arm.  Defendants deny the remaining averments in paragraph 27.

28.     After defendant Taylor fired the fifth shot into Mr. Wrana, defendant Commander Baugh used his ballistic shield to forcibly push Mr. Wrana to the ground while the other defendant police officers subdued and handcuffed Mr. Wrana behind his back.

**ANSWER:**     Defendants admit after Defendant Taylor fired the fifth shot into Mr. Wrana causing him to drop the knife, other Defendant Police Officers subdued and handcuffed Mr. Wrana behind his back. Defendants deny the remaining averments in paragraph 28.

29.     Mr. Wrana was screaming from immense, intense, excruciating and unbearable pain as a result of the wounds inflicted to his body by defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer. Despite his severe and painful condition from being shot, tackled and handcuffed by defendants, defendants forced Mr. Wrana to sit up in a hard wood chair. In order to put Mr. Wrana in the chair, defendants forcibly pulled Mr. Wrana's handcuffed arms up and over the back of the chair, causing him further pain and suffering.

**ANSWER:**     Defendants admit they sat Mr. Wrana on a hard wooden chair after he was restrained. Defendants deny the remaining averments in paragraph 29.

30.     Defendant Commander Baugh then took photographs of Mr. Wrana and his wounds while Mr. Wrana was seated handcuffed in the chair in continuous and severe pain and bleeding from his internal and external wounds.

**ANSWER:**     Defendants admit Defendant Commander Baugh took photographs of Mr. Wrana and his wounds while Mr. Wrana was seated and handcuffed in the chair. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 30.

31.     Despite the nature and extent of Mr. Wrana's obvious injuries, defendants refused to allow the personnel from Bud's Ambulance Service, who were present and had remained at the scene, to render any medical or other assistance to Mr. Wrana.

**ANSWER:**     Defendants admit personnel from Bud's Ambulance Service who had remained at the scene were told they were no longer needed as paramedics from the Park Forest

Fire Department would be taking over. Defendants deny the remaining averments in paragraph 31.

32. Instead, defendants called and waited for ambulance personnel from defendant PARK FOREST. When ambulance personnel from PARK FOREST arrived at Victory Centre, the defendant police officers further restrained Mr. Wrana on a cot in a seated position in 4 point restraints.

**ANSWER:** Defendants admit they called the Park Forest Fire Department to transport Plaintiff by ambulance and when ambulance personnel arrived at Victory Centre, Defendant police officers assisted paramedics in placing Mr. Wrana on a cot. Defendants further admit Mr. Wrana was initially positioned on the cot in a seated position and was put into a standard 4 point harness restraint for transport on the cot. Defendants deny the remaining averments in paragraph 32.

33. Defendant PARK FOREST initially transported Mr. Wrana to St. James Hospital in Chicago Heights, Illinois. At St. James Hospital the determination was made by the medical staff that the nature and extent of Mr. Wrana's injuries required that he be transferred to the trauma center of Advocate Christ Medical Center in Oak Lawn, Illinois.

**ANSWER:** Defendants admit Park Forest ambulance personnel initially transported Mr. Wrana to St. James Hospital in Chicago Heights, Illinois. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 33.

34. While at Christ Medical Center, Mr. Wrana was told that he had sustained fatal injuries and that he would likely die from those injuries. Mr. Wrana was conscious and alert and knew that he was dying from the injuries inflicted upon him by defendants.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 34.

35. JOHN WRANA, JR., died at Advocate Christ Medical Center on July 27, 2013.

**ANSWER:** Defendants admit the averments in paragraph 35.

36.     The Cook County Medical Examiner conducted a Post-Mortem Examination of Mr. Wrana's remains on July 28, 2013.  The Medical Examiner concluded that Mr. Wrana died from *hemoperitonium* (internal bleeding in the abdomen), due to blunt force trauma to his abdomen as a result of shots fired from a bean bag shotgun.  The Medical Examiner ruled that the manner of Mr. Wrana's death was a Homicide.

**ANSWER:**     Defendants admit the averments in paragraph 36.

37.     When defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer arrived at Victory Centre, there was no need for the use of deadly or less than deadly force with respect to Mr. Wrana.

**ANSWER:**     Defendants deny the averments in paragraph 37.

38.     The manufacturer's specifications for the "Super-Sock Orange Hull 12 gauge Bean Bag Cartridges," Model No. 2581, chosen and used by defendants against Mr. Wrana, provide that the terminal velocity of the deployed bean bag is 280 feet per second.  Two hundred eighty (280) feet per second is the equivalent of approximately 190 miles per hour. The Bean Bag Cartridge maker's specifications provided to defendant PARK FOREST further warns that "Shots to the head, neck thorax, heart or spine can result in fatal injury."

**ANSWER:**     Defendants admit the manufacturer's specifications for the "Super-Sock Orange Hull 12 gauge Bean Bag Cartridges," Model No. 2581, chosen and used by Defendants against Mr. Wrana, provide that the terminal velocity is 280 feet per second at ten yards.  Defendants further admit the bean bag cartridge maker's specifications warn that "Shots to the head, neck thorax, heart or spine can result in fatal or serious injury." Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 38.

39.     According to the bean bag manufacturer's specifications, the minimum range for discharge is fifteen feet and sixty feet on the outset.  Furthermore, the age of the potential target of

the shotgun was a factor that was to be taken into consideration before firing beanbag rounds at a human target.

**ANSWER:** Defendants admit the age of the potential target of the less lethal shotgun is a factor to be taken into consideration before firing beanbag rounds at a human target. Defendants deny the remaining averments in paragraph 39.

**The Actions and Conduct of the VILLAGE of PARK FOREST and Its Police Officers Violated Mr. Wrana's Civil Rights As Guaranteed by the United States Constitution.**

40. Following their arrival at Victory Centre as aforesaid, and with deliberate indifference and a conscious disregard of Mr. Wrana's emotional and physical condition, defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer provoked a situation in which Mr. Wrana was clearly emotionally disturbed and physically infirmed, but not a threat to anyone, including the defendant police officers, who had no lawful authority to enter his residence.

**ANSWER:** Defendants deny the averments in paragraph 40.

41. The acts, conduct and omissions of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer at the Victory Centre residence of Mr. Wrana were objectively unreasonable and in violation of the Fourth and Fourteenth Amendments of the United States Constitution in that the defendants used excessive and deadly force where no such force was justified and was objectively unreasonable, and where the officers, with deliberate indifference, and in violation of proper police standards and training, killed Mr. Wrana.

**ANSWER:** Defendants deny the averments in paragraph 41.

42. The acts, conduct and omissions of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer at the Victory Centre room of Mr. Wrana were objectively unreasonable, willful and wanton, malicious, oppressive, shocks the conscience and committed with deliberate indifference and conscious and callous disregard of Mr. Wrana's constitutional rights and physical

and emotional conditions. Furthermore, the defendants' actions were reckless and the risk of death to Mr. Wrana from their actions was serious, avoidable and obvious.

**ANSWER:**    Defendants deny the averments in paragraph 42.

**The VILLAGE of PARK FOREST'S Practice and Policy of Approving Misconduct and its Failure to Properly Discipline and Supervise Police Officers**

43.    On or about April 1, 2014, defendant PARK FOREST issued a public statement in response to the criminal charges filed by the Cook County State's Attorney against defendant Taylor stating that defendant Taylor had the full support of defendant VILLAGE of PARK FOREST. On or before April 29, 2014, Taylor was indicted for Felony Reckless Conduct by the Cook County Grand Jury for his conduct in killing Mr. Wrana.

**ANSWER:**    Defendants deny Defendant Taylor killed Mr. Wrana. Defendants admit the remaining averments in paragraph 43.

44.    On information and belief, on or about September 8, 2014, CLIFFORD R. BUTZ, as Chief of Police for defendant VILLAGE of PARK FOREST, utilized defendant PARK FOREST's membership and sponsorship in the Critical Reach Alert System which, upon further belief, is funded and provided by defendant PARK FOREST. The Critical Reach system is intended for use as:

> [A] complete alert solution for all authorities and all types of public safety issues. Critical Reach addresses the 2 essential elements of a needed alert system:
>
> > (1) Critical Reach connects public safety authorities with each other. Critical Reach links law enforcement, health, and fire at the federal state, county, and local levels.
> >
> > (2) Critical Reach connects authorities with the public. Critical Reach makes it possible for authorities to send information directly to the schools, businesses, hospitals, or citizens that need it most.

(http://www.criticalreach.org/connections.htm)

**ANSWER:**     Defendants admit the averments in paragraph 44.

45.     In his use of the Critical Reach Alert System, Chief BUTZ prepared and released a bulletin to other law enforcement agencies in the state of Illinois from the address of the defendant PARK FOREST.  The bulletin states in part that: "The Village of Park Forest and the Park Forest Police Department have stood by [defendant] Officer Taylor from the beginning finding that he did not violate any department policies or procedures…"  This bulletin referred to defendant Taylor's actions and conduct which is the subject of this complaint, namely, the homicide of JOHN WRANA, Jr. Chief BUTZ's statement further urged the municipal recipients of the Critical Reach bulletin to attend defendant Taylor's criminal trial:

> As a show of support for [defendant] Officer Taylor, and our profession, we are asking that any Law Enforcement Officer, Local, County, State and Federal, available to come to the Markham Court House [sic] on Monday, Sept. 15th at 9:00 am to form a unified line of support from inside the front doors of the Markham Court House [sic] all the way to Court Room [sic] #105.  We would like everyone in attendance to be in uniform as a sign of support.  Please feel free to come and show your support for Officer Taylor during the trial.

**ANSWER:**     Defendants deny the characterization of Mr. Wrana's death as a "homicide" but admit the remaining averments in paragraph 45.

46.     The April 1, 2014 Public Statement by defendant VILLAGE of PARK FOREST, and its September 8, 2014 Critical Reach Bulletin distributed by defendant Chief BUTZ, were an acceptance and ratification of the defendant police officers' conduct and actions in causing the constitutional deprivations and homicide of JOHN WRANA, JR.

**ANSWER:**     Defendants deny they caused constitutional deprivations to and the homicide of John Wrana, Jr.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 46.

47.     On information and belief, none of the defendant police officers or command defendants has been disciplined by defendant VILLAGE of PARK FOREST for their involvement and participation in the homicide of JOHN WRANA, JR.  On further information and belief, no

17

changes have been made by PARK FOREST to its police policies or procedures in response to the defendant police officers' actions and conduct in the homicide of JOHN WRANA, JR.

**ANSWER:**   Defendants deny the characterization of Mr. Wrana's death as a "homicide" but admit the remaining averments in paragraph 47.

48.     The acts, conduct and omissions of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer at the residence of Mr. Wrana on July 26, 2013 were the direct result of the failure of defendants PARK FOREST, Commander MICHAEL BAUGH and Chief of Police CLIFFORD R. BUTZ to properly train, supervise, monitor and discipline its police officers, including these defendants, in connection with established procedures and accepted responses and the use of force.

**ANSWER:**   Defendants deny the averments in paragraph 48.

49.     Before and at the time of the subject occurrence, defendant VILLAGE of PARK FOREST had within its municipal corporate limits many elderly senior citizens living in senior assisted-living residences, including the Victory Centre where Mr. Wrana resided.

**ANSWER:**   Defendants admit the averments in paragraph 49.

50.     Defendants PARK FOREST, and Commander MICHAEL BAUGH, with deliberate indifference, failed to properly train, supervise, and discipline its police officers, including the defendant police officers and command defendants, with respect to policies and procedures appropriate for police responses or other involvement, with elderly citizens suffering from senior-related physical limitations and emotional disturbances.

**ANSWER:**   Defendants deny the averments in paragraph 50.

51.     Specifically, VILLAGE of PARK FOREST police officers are (1) not properly trained in the use of the "less lethal" shotgun, (2) not properly trained in the use of force, (3) not

trained, or improperly trained, with respect to police interaction with elderly citizens and the procedures to be used in resolving incidents with elderly citizens with limited physical mobility and/or suffering from uncharacteristic behavior or emotional distress, and (4) do not consider or utilize properly qualified persons to diffuse incidents involving its elderly citizens who may be suffering from physical and uncharacteristic emotional and/or behavioral disorders.

**ANSWER:**     Defendants deny the averments in paragraph 51.

52.     Plaintiff, SHARON MANGERSON, is the duly appointed Independent Executor of the Estate of JOHN WRANA, JR., Deceased, pursuant to Order of court, and she brings this action in that capacity pursuant to the Wrongful Death Act of the State Illinois, 740 ILCS 180/1 *et. seq.* Plaintiff's decedent, JOHN WRANA, JR., left surviving him his next of kin, each of whom suffered pecuniary losses, including a loss of his society and companionship, as a proximate result of his death, including: ANTHONY HOYT, his great-nephew; KATHLEEN HOYT, his great-niece; MICHAEL HOYT, his great-nephew; JOHN JOSEPH KRYGER, his nephew; ANN KRYGER, his niece; GAYLE KRYGER AUGER his niece; ROBERT KRYGER, his post-deceased nephew; CHRISTINE KRYGER, his great-niece; JOSEPH KRYGER III, his great-nephew; ERIC KRYGER, his great-nephew; DAVID LEROY BOUQUET, his nephew; CAROLYN LUNA SZAMOCKI, his niece; KRISTY SZAMOCKI AARON, his great-niece; KELLY SZAMOCKI, his great-niece; KENNETH SZAMOCKI, his nephew; and GARY ALAN WRANA, his great-nephew, and any other surviving next of kin who may exist but are still unknown.

**ANSWER:**     Defendants admit Plaintiff Sharon Mangerson is the duly appointed Independent Executor of the Estate of John Wrana, Jr., Deceased, pursuant to Order of court, and she brings this action in that capacity pursuant to the Wrongful Death Act of the State Illinois, 740 ILCS 180/1 *et. seq.* Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 52.

53.     Plaintiff also sues as the lawfully appointed Independent Executor of the Estate of JOHN WRANA, JR., Deceased, under the Illinois Survival Statute, and claims damages for the pain and suffering Mr. Wrana endured prior to his death.

**ANSWER:**     Defendants admit Plaintiff also sues as the appointed Independent Executor of the Estate of John Wrana, Jr., Deceased, under the Illinois Survival Statute, and claims damages for the pain and suffering Mr. Wrana allegedly endured prior to his death. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 53.

54.     Plaintiff, by reason of decedent's injuries and death, has suffered pecuniary loss and incurred expenses for the cost of decedent's funeral expenses and the costs of administering decedent's estate.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 54.

55.     As a proximate result of defendants' acts and/or omissions, plaintiff's decedent, JOHN WRANA, JR., prior to his death, suffered great physical injuries, pain, mental anguish and humiliation which resulted in his death, as well as the loss and deprivation of the normal activities, pursuits and pleasures of life, and loss of life.

**ANSWER:**     Defendants deny the averments in paragraph 55.

56.     As a proximate result of the acts and/or omissions of all defendants, Plaintiff's decedent, JOHN WRANA, JR., suffered physical injuries, pain, emotional distress and death, all caused by the violations of his rights under the United States Constitution.

**ANSWER:**     Defendants deny the averments in paragraph 56.

## COUNT I
### Federal Civil Rights Claim Pursuant to 42 U.S.C. § 1983
### Deprivation of Life/ Due Process (MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS and MITCH GREER)

57.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

58.     The acts and conduct of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer at the Senior Assisted Living Center room of JOHN WRANA, JR., were committed with deliberate indifference, shocked the conscience and proximately caused the death by homicide of JOHN WRANA, JR., and constituted an unlawful and unconstitutional deprivation of Mr. Wrana's life without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

**ANSWER:**     Defendants deny the averments in paragraph 58.

59.     Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the pain, suffering and wrongful death of her decedent, JOHN WRANA, JR., and for the loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983.

**ANSWER:**     Defendants admit Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the alleged pain, suffering and alleged wrongful death of her decedent, JOHN WRANA, JR., and for the alleged loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983 but deny Plaintiff is entitled to any such relief.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

**COUNT II**
**Federal Civil Rights Claim Pursuant to 42 U.S.C. § 1983**
**Excessive Use of Force (MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS and MITCH GREER )**

60.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as it fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

61.     The acts and conduct of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer at the Victory Centre room of JOHN WRANA, JR., constituted an objectively unreasonable and unlawful and unconstitutional excessive use of force in violation of the Fourth Amendment of the United States Constitution.

**ANSWER:**     Defendants deny the averments in paragraph 61.

62.     Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the pain, suffering and wrongful death of her decedent, JOHN WRANA, JR., and for the loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983.

**ANSWER:**     Defendants admit Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the alleged pain, suffering and wrongful death of her decedent, John Wrana, Jr., and for the alleged loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983 but deny Plaintiff is entitled to any such relief.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

**COUNT III**
**Federal Civil Rights Claim Pursuant to 42 U.S.C. § 1983**
**Unlawful and Unreasonable Seizure (MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS and MITCH GREER)**

63.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as it fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

64.     The acts and conduct of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer at the Victory Centre room of JOHN WRANA, JR., were unlawful and unreasonable in that they had no lawful basis, justification or probable cause to enter Mr. Wrana's residence or to seize him. Therefore, their actions constituted a violation of Mr. Wrana's constitutional right to be free from unreasonable seizure guaranteed under the Fourth Amendment to the United States Constitution.

**ANSWER:**     Defendants deny the averments in paragraph 64.

65.     Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the pain, suffering and wrongful death of her decedent, JOHN WRANA, JR., and for the loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983.

**ANSWER:**     Defendants admit Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the alleged pain, suffering and wrongful death of her Decedent, John Wrana, Jr., and for the alleged loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983 but deny Plaintiff is entitled to any such relief.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

**COUNT IV**
**Federal Civil Rights Claim Pursuant to 42 U.S.C. § 1983**
**Supervisor Liability (MICHAEL BAUGH)**

66.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as it fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

67.     Defendant Commander MICHAEL BAUGH was the PARK FOREST Police Department Supervisor in charge and command and at the scene of this incident, and directed and supervised the acts and conduct of defendants Corporal Elliot, Taylor, Hoskins and Greer at the Victory Centre room of Mr. Wrana.

**ANSWER:**     Defendants admit the averments in paragraph 67.

68.     Defendant Commander MICHAEL BAUGH directed and supervised the other defendant officers in the use of excessive force, unlawful seizure and homicide of Plaintiff's decedent, JOHN WRANA, JR., and directly and personally authorized the use and deployment of the shotgun in Mr. Wrana's room which caused his death by homicide.

**ANSWER:**     Defendants admit Defendant Baugh directly and personally authorized the use and deployment of the less lethal shotgun in Mr. Wrana's room. Defendants deny the remaining averments in paragraph 68.

69.     Defendant Commander MICHAEL BAUGH knew or should have known that directing and authorizing the use and deployment of the "less lethal" bean bag shotgun against a nearly 96 year old man inside Mr. Wrana's room, given Mr. Wrana's then mental and physical condition, from a distance of approximately 6 to 8 feet, which was approximately half the minimum distance required by the projectile's manufacturer and was objectively unreasonable and demonstrated deliberate indifference to Mr. Wrana's constitutional rights and mental and physical

24

conditions, thus violating his rights to due process of law and to be free from the use of excessive

force and unlawful seizure as guaranteed by the Fourth and Fourteenth Amendments of the United

States Constitution.

**ANSWER:**     Defendants deny the averments in paragraph 69.

70.     Defendant Commander MICHAEL BAUGH exercised improper command and failed

to prevent the unlawful acts and conduct of all the defendant police officers at the scene, which

proximately caused the death by homicide of Plaintiff's decedent, JOHN WRANA, JR.

**ANSWER:**     Defendants deny the averments in paragraph 70.

71.     Defendant Commander MICHAEL BAUGH's actions and conduct were knowing,

intentional, wilful and wanton, and committed with deliberate indifference to Mr. Wrana's condition

and constitutional rights, thus violating his rights under the Fourth and Fourteenth Amendments of

the United States Constitution.

**ANSWER:**     Defendants deny the averments in paragraph 71.

72.     Defendant, Commander MICHAEL BAUGH proximately caused the constitutional

violations suffered by JOHN WRANA, JR., by reason of reckless and/or deliberate indifference, and

by failing to properly train the defendants Corporal Elliot, Taylor, Hoskins and Greer in the proper

deployment of police actions, and the use of weapons, including the "less lethal" shotgun deployed

and ordered for use by defendant Commander Baugh in this case.

**ANSWER:**     Defendants deny the averments in paragraph 72.

73.     Defendant, Commander MICHAEL BAUGH, by reason of deliberate indifference,

failed or refused to train the officers to de-escalate situations involving elderly citizens who may be

physically impaired and emotionally disturbed when he knew or in the exercise of reasonable care,

should have known, that it was likely that they would confront such persons suffering from a physical ailment who exhibit a sudden onset of strange and uncharacteristic behavior.

**ANSWER:**     Defendants deny the averments in paragraph 73.

74.     Defendant, Commander MICHAEL BAUGH, by reason of deliberate indifference, failed or refused to train the defendant officers in situations involving elderly citizens who may be physically impaired and emotionally disturbed. That failure was the proximate cause of this incident which resulted in the homicide of JOHN WRANA, JR. Defendant BAUGH allowed the defendant police officers to physically move in force into Mr. Wrana's small single room residence with multiple weapons and devices drawn and aimed at Mr. Wrana when he knew, or the exercise of reasonable care should have known, that their actions would threaten and further agitate Mr. Wrana.

**ANSWER:**     Defendants deny the averments in paragraph 74.

75.     Defendant, Commander MICHAEL BAUGH, by reason of deliberate indifference, failed or refused to train the defendant police officers Corporal Elliot, Taylor, Hoskins and Greer in situations involving elderly citizens who may be physically impaired and emotionally disturbed. Instead, directed by Commander MICHAEL BAUGH, defendants improperly employed police tactical intervention with unnecessary and unreasonable force causing JOHN WRANA JR's homicide (1) knowing that it was 9:00 p.m. at night and that Mr. Wrana would soon tire and likely fall asleep if left undisturbed; (2) knowing there were personnel from the senior assisted living facility on the floor who could help de-escalate the situation; (3) knowing the decedent was nearly 96 years old and unable to move without assistance; (4) knowing the decedent was becoming increasingly agitated by the defendants' presence and threats; (5) knowing the decedent was likely suffering from a physical ailment that was causing or contributing to his agitation; (6) knowing there

were non-violent methods to de-escalate the situation, and (7) knowing there was no avenue for 95 year old Mr. Wrana to escape his room past five armed police officers.

**ANSWER:**    Defendants deny the averments in paragraph 75.

76.    Defendant, Commander MICHAEL BAUGH, by reason of deliberate indifference, failed or refused to train defendant police officers Corporal Elliot, Taylor, Hoskins and Greer in situations involving elderly persons. Commander MICHAEL BAUGH failed to do so even though knew, or in the exercise of reasonable care, should have known, that it was likely that they would confront such persons suffering from a physical ailment who exhibit a sudden onset of strange and uncharacteristic behavior and may be emotionally disturbed, such as was Mr. Wrana, including within senior assisted living facilities located within the municipal limits of PARK FOREST.  This deliberate failure proximately caused the injuries and death by homicide suffered by JOHN WRANA, JR., thus violating his rights to due process of law and to be free from the use of excessive force and unlawful seizure as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

**ANSWER:**    Defendants deny the averments in paragraph 76.

77.    Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the pain, suffering and wrongful death of her decedent, JOHN WRANA, JR., and for the loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983.

**ANSWER:**    Defendants admit Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the alleged pain, suffering and wrongful death of her decedent, John Wrana, Jr., and for the alleged loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983 but deny Plaintiff is entitled to any such relief.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT V
### Federal Civil Rights Claim Pursuant to 42 U.S.C. § 1983
### Failure to Intervene (MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS and MITCH GREER)

78. Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:** Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

79. At the time that defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer engaged in the excessive use of force and unlawful conduct in Mr. Wrana's room at Victory Centre, described herein above, each defendant police officer knew that each and every other defendant was using unlawful excessive force against plaintiff's decedent, JOHN WRANA, JR.

**ANSWER:** Defendants deny the averments in paragraph 79.

80. At the time that defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer engaged in the excessive force and unlawful conduct in Mr. Wrana's room at Victory Centre, each said defendant had the opportunity and the duty to intervene to prevent the injuries to, and homicide of, Mr. Wrana by the other, but each defendant failed to do so under color of law, thus violating his rights to due process of law and to be free from the use of excessive force and unlawful seizure as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

**ANSWER:** Defendants deny the averments in paragraph 80.

81. The failure of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer, and each of them, to intervene and take steps preventing the harm suffered by JOHN

28

WRANA, JR., was intentional, willful and wanton, and/or reckless or done with deliberate indifference, and proximately caused injury to, and the death of, plaintiff's decedent JOHN WRANA, JR. and violated his clearly established constitutional rights.

**ANSWER:** Defendants deny the averments in paragraph 81.

82. Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the pain, suffering and wrongful death of her decedent, JOHN WRANA, JR., and for the loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983.

**ANSWER:** Defendants admit Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the alleged pain, suffering and wrongful death of her decedent, John Wrana, Jr., and for the alleged loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983 but deny Plaintiff is entitled to any such relief.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT VI
### Federal Civil Rights Claim Pursuant to 42 U.S.C. § 1983
### Failure to Provide Medical Attention (MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS and MITCH GREER)

83. Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:** Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

84. At the time defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer shot, injured and forcefully seized plaintiff's decedent JOHN WRANA, JR., Mr. Wrana was suffering from serious internal and external wounds to his body and was in serious medical need.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 84.

85.     At the time defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer shot, injured and forcefully seized plaintiff's decedent, JOHN WRANA, JR., each said defendant was deliberately indifferent to JOHN WRANA, JR.'s medical need and caused harm to JOHN WRANA, JR., under color of law, thus depriving him of his right to due process of law in violation of the Fourteenth Amendment of the United States Constitution, in that they failed and/or refused to allow personnel from Bud's Ambulance Service to render aid to Mr. Wrana; failed to have trained emergency medical technicians from the Park Forest Police Department at the scene before defendants seized and wounded Mr. Wrana when defendants knew they would not utilize personnel from Bud's Ambulance Service to offer assistance to Mr. Wrana; and intentionally delayed calling for medical assistance from the Park Forest Fire Department until after Mr. Wrana had been seized, subdued, handcuffed and photographed by defendants.

**ANSWER:**   Defendants deny the averments in paragraph 85.

86.     Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the pain, suffering and wrongful death of her decedent, JOHN WRANA, JR., and for the loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983.

**ANSWER:**   Defendants admit Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the alleged pain, suffering and wrongful death of her decedent, John Wrana, Jr., and for the alleged loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983 but deny Plaintiff is entitled to any such relief.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT VII
### Federal Civil Rights Claim Pursuant to 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights (MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS and MITCH GREER)

87.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

88.     Defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer acting under color of law, individually and in concert with each other, and with deliberate indifference, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired among and between themselves to deprive Plaintiff's decedent, JOHN WRANA, JR., of the rights and privileges of the laws (1) to be provided medical attention, (2) to the right to life, (3) to be free of unreasonable seizure, (4) to be free from the use of excessive force, and (5) the benefit of due process of the laws, thus violating his rights under the Fourth and Fourteenth Amendment of the United States Constitution.

**ANSWER:**     Defendants deny the averments in paragraph 88.

89.     Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the pain, suffering and wrongful death of her decedent, JOHN WRANA, JR., and for the loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983.

**ANSWER:**     Defendants admit Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the alleged pain, suffering and wrongful death of her decedent, John Wrana, Jr., and for the alleged loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983 but deny Plaintiff is entitled to any such relief.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT VIII
## 42 U.S.C. § 1983 - MONELL LIABILITY
## (VILLAGE OF PARK FOREST)

90.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

91.     The misconduct described above by the individual and supervisory defendant officers was undertaken pursuant to the policy and practice of the defendant VILLAGE OF PARK FOREST in that the PARK FOREST POLICE DEPARTMENT allowed its police officers to engage in misconduct with little fear of reprisal resulting in (1) the unreasonable and excessive use of force; (2) the unlawful seizure of individuals without authority; (3) depriving immediate medical attention to persons injured by its officers; (4) allowing police officers to improperly implement the use of unwarranted tactical police intervention escalating the danger to persons it confronts; (5) not properly training, supervising, or disciplining its police officers with respect to appropriate police responses to crisis situations involving elderly citizens who exhibit signs and symptoms of physical limitations and/or are suffering emotional or behavioral symptoms relative to their advanced age; (6) not properly training, supervising, or disciplining its police officers with respect to the use of force, (7) not properly training, supervising, or disciplining its police officers with respect to the use of the "less lethal" shotgun, and (8) allowing police officers to engage in misconduct with little fear

of reprisal from their failure to intervene and intercede to prevent the use of unreasonable force by other police officers, and otherwise violated due process in a similar manner to that alleged herein.

**ANSWER:**     Defendants deny the averments in paragraph 91.

92.     The above-described widespread practices, which were so well-settled as to constitute *de facto* policy in the PARK FOREST POLICE DEPARTMENT, were allowed to exist because municipal policy makers with authority over the same exhibited deliberate indifference to these problems, and ratified them. Their acceptance and ratification is evidenced, *inter alia,* by (1) the April 1, 2014 Public Statement by defendant VILLAGE of PARK FOREST, and (2) the September 8, 2014 Critical Reach Bulletin created and distributed by Chief of Police CLIFFORD R. BUTZ. Moreover, they were so pervasive that they carry the force of law.

**ANSWER:**     Defendants deny the averments in paragraph 92.

93.     Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the VILLAGE of PARK FOREST declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

**ANSWER:**     Defendants deny the averments in paragraph 93.

94.     Additionally and/or alternatively, the misconduct described in this Count was undertaken pursuant to the policy and practice of the VILLAGE of PARK FOREST in that the constitutional violations committed against Mr. Wrana were committed with the approval, and acceptance of persons with final policymaking authority for the VILLAGE of PARK FOREST, including without limitation, Chief of Police CLIFFORD BUTZ.

**ANSWER:**     Defendants deny the averments in paragraph 94.

95. The customs and practices set forth above were the moving force behind the numerous constitutional violations in this case, and directly and proximately caused plaintiff's decedent to suffer his homicidal death and pain and suffering, as well as plaintiff to suffer the damages set forth above.

**ANSWER:** Defendants deny the averments in paragraph 95.

96. Additionally and/or alternatively, Defendant VILLAGE of PARK FOREST's failure and/or refusal to train its officers with respect to (1) the proper use of force, (2) the proper use of the "less lethal" shotgun, and (3) the appropriate police responses to crisis situations involving elderly citizens who exhibit signs and symptoms of physical limitations, and/or are suffering emotional or behavioral symptoms relative to their advanced age, constituted deliberate indifference to the highly predictable consequence of constitutional violations to the rights of persons such as Mr. Wrana. It was patently obvious that such failure to train would result in PARK FOREST's liability for that failure in this single incident whereas here, (1) the elderly person was almost 96 years old; (2) inside his locked residence within a senior-assisted living facility; (3) suffering from a physical ailment which, in turn, caused uncharacteristic mental behavior connected with his significantly advanced age; (4) committed no criminal offense, but rather, only refused transport for medical attention; (5) the defendant police officers failed to attempt to de-escalate the situation with time and/or appropriate intervention; and (6) implemented police tactical intervention using a weapon inside a room contrary to the required specifications for the use of that weapon.

**ANSWER:** Defendants deny the averments in paragraph 96.

97. The defendant VILLAGE OF PARK FOREST policy makers willfully, wantonly and with deliberate indifference, approved, ratified, accepted, encouraged and otherwise caused the

constitutional deprivations and violations against Plaintiff's decedent, JOHN WRANA, JR.'s rights to the due process of the laws, provided under the Fourteenth Amendment of the United States Constitution.

**ANSWER:**    Defendants deny the averments in paragraph 97.

98.    As a proximate result of the acts and/or omissions of defendant VILLAGE OF PARK FOREST, which caused, permitted and/or allowed the actions and inactions of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer, Plaintiff's decedent, JOHN WRANA, JR., prior to his death, suffered great physical injuries, pain, mental anguish, emotional distress and humiliation which resulted in his death, as well as the loss and deprivation of the normal activities, pursuits and pleasures of life, and loss of life, all caused by the violations to and deprivations of his rights under the United States Constitution.

**ANSWER:**    Defendants deny the averments in paragraph 98.

99.    Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the pain, suffering and wrongful death of her decedent, JOHN WRANA, JR., and for the loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983.

**ANSWER:**    Defendants admit Plaintiff, on behalf of the Estate of John Wrana, Jr., Deceased, claims damages for the alleged pain, suffering and wrongful death of her decedent, John Wrana, Jr., and for the alleged loss of his society and companionship, and for funeral and burial expenses under 42 U.S.C. § 1983 but deny Plaintiff is entitled to any such relief.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT IX
## Illinois Law - Wrongful Death Action (ALL DEFENDANTS)

100.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

101.     At all times herein relevant, the defendants, MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS, and MITCH GREER, were agents and employees of defendant, VILLAGE OF PARK FOREST, and acting within the scope of their employment with defendant PARK FOREST, and owed a duty of care to Plaintiff's decedent, JOHN WRANA, JR.

**ANSWER:**     Defendants admit the averments in paragraph 101.

102.     On and before July 26, 2013, the defendants, and each of them, knew or should have known, that JOHN WRANA, JR., had committed no crime; that there was no lawful basis upon which to enter his private residence and, there was no police tactical intervention required to be used against Mr. Wrana.

**ANSWER:**     Defendants deny the averments in paragraph 102.

103.     On and before July 26, 2013, the defendants, and each of them, knew or should have known, that there was no immediate need for police intervention to be used against Mr. Wrana in his private residence.

**ANSWER:**     Defendants deny the averments in paragraph 103.

104.     On and before July 26, 2013, the defendants, and each of them, knew or should have known that the manufacturer of the Super-Sock Orange Hull 12 Gauge Bean Bag Cartridge,

Model No. 2581, had specified that the shotgun was not to be fired at a human being at a distance of less than 15 feet.

**ANSWER:**    Defendants deny the averments in paragraph 104.

105.    On and before July 26, 2013, the defendants, and each of them, knew or should have known that the manufacturer of the Super-Sock Orange Hull 12 Gauge Bean Bag Cartridge, Model No. 2581, warned that the terminal velocity of a single deployed bean bag cartridge is 280 feet per second, or approximately 190 miles per hour.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 105.

106.    On and before July 26, 2013, the defendants, and each of them, knew or should have known that the manufacturer of the Super-Sock Orange Hull 12 Gauge Bean Bag Cartridge, Model No. 2581, had specified that shots to the head, neck thorax, heart or spine could result in fatal injury.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 106.

107.    On and before July 26, 2013, the defendants, and each of them, knew or should have known that the age of a potential human target was to be taken into consideration in deciding whether to discharge the shotgun; at what distance to discharge the weapon; and, the number of rounds to discharge, if any.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 107.

108.    On and before July 26, 2013, the defendants, and each of them, knew or should have known that it was the duty of any officer present at a scene and observing another officer

using force that is beyond that which was reasonable under the circumstances to intercede to prevent the use of unreasonable force.

**ANSWER:**     Defendants admit the averments in paragraph 108.

109.     On and before July 26, 2013, the defendants, and each of them, knew or should have known that firing multiple rounds of Super-Sock Orange Hull 12 Gauge Bean Bag Cartridges, Model No. 2581 from a distance of only approximately 6 to 8 feet, at an almost 96 year old man, who had limited mobility and who required assistive devices to stand and walk, and aimed at his thorax and abdomen constituted deadly force in that the force created a substantial likelihood of causing death or very serious injury.

**ANSWER:**     Defendants deny the averments in paragraph 109.

110.     On and before July 26, 2013, the defendants, and each of them, knew or should have known that Section 300.3.2 and Section 300.3.3 of the PARK FOREST Police Department Policy on Use of Force required the defendants, in determining whether to apply force to plaintiff's decedent, to consider JOHN WRANA JR.'s age, his size, his relative strength, his skill level, his level of exhaustion or fatigue, the number of officers present versus Mr. Wrana, Mr. Wrana's mental state, the availability of other options and their possible effectiveness, the risk of Mr. Wrana escaping, the need for immediate control of Mr. Wrana, prior contact with Mr. Wrana or awareness of any propensity for violence, and whether Mr. Wrana had been given sufficient opportunity to comply.

**ANSWER:**     Defendants admit the averments in paragraph 110.

111.     At the time and place aforesaid, the defendants, and each of them, knew or in the exercise of reasonable care should have known, that plaintiff's decedent, JOHN WRANA, JR.,

was exhibiting sudden and uncharacteristic behavior that was likely due to a physical ailment which was causing and/or contributing to his agitation, fear, and confusion as to the surrounding circumstances.

**ANSWER:**     Defendants deny the averments in paragraph 111.

112.     At the time and place aforesaid, the defendants, and each of them, knew or in the exercise of reasonable care should have known, that neither the defendants nor the PARK FOREST Police Department had any prior contact with Mr. Wrana; and further knew or should have known that Mr. Wrana did not have a propensity for violence.

**ANSWER:**     Defendants deny the averments in paragraph 112.

113.     At the time and place aforesaid, defendants and each of them knew or should have known there was only one door to plaintiff's decedent's room at Victory Centre; that the door to the room could be locked from the outside; that the defendants had the key to the door; and, that there was no way for Mr. Wrana to "escape" the room past five armed, much younger and much stronger police officers.

**ANSWER:**     Defendants admit each of them knew there was only one door to Mr. Wrana's room at Victory Centre but deny the remaining averments in paragraph 113.

114.     At the time and place aforesaid, the defendants, and each of them, knew or should have known that it was nearly 9:00 p.m. at night and that, given Mr. Wrana's advanced age and limited mobility, in all likelihood he would quiet himself and fall asleep if left alone and undisturbed in his own room.

**ANSWER:**     Defendants deny the averments in paragraph 114.

115.     Before and at the time and place aforesaid, the defendants VILLAGE OF PARK FOREST, by its agents and employees, and defendants, including COMMANDER BAUGH,

knew or should have known that it was likely that serious bodily injury or death would result to citizens by allowing PARK FOREST police officers to respond to a situation involving an elderly senior citizen suffering from emotional and physical ailments without the proper police training as to how to de-escalate the situation without violent force; or how to prevent provoking the situation; and by allowing officers to shoot repeated rounds from a bean bag shotgun at less than 15 feet directly at a senior citizen's chest and abdomen; and further, knew or should have known serious bodily injury or death would result in such scenarios without proper command supervision.

**ANSWER:**    Defendants deny the averments in paragraph 115.

116.    On and before July 26, 2013, the defendant, VILLAGE OF PARK FOREST, an Illinois Municipal Corporation, by its agents and employees, including, but not limited to, MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS, MITCH GREER, and defendants MICHAEL BAUGH, CRAIG TAYLOR, LLOYD ELLIOT, CHARLIE HOSKINS, and MITCH GREER individually, and each of them, in reckless and conscious disregard of the facts known to them and the known consequences of their conscious disregard of those facts, breached their duty to Plaintiff's decedent, JOHN WRANA, JR., and were guilty of one or more of the following acts of willful and wanton misconduct:

**ANSWER:**    Defendants deny the averments in paragraph 116.

a.    Wilfully and wantonly, recklessly and in conscious disregard of the known risks and consequences, entered the private residence of JOHN WRANA, JR., without lawful authority knowing that Mr. Wrana had committed no crime; and that he had only refused to be transported to a hospital, which did not present a need for immediate police intervention, including police tactical intervention.

**ANSWER:**    Defendants deny the averments in paragraph 116(a).

b.       Wilfully and wantonly, recklessly and in conscious disregard of the known risks and consequences permitted, allowed and/or fired five rounds of bean bags in rapid succession from a shotgun expelling Super-Sock Orange Hull 12 Gauge Bean Bag Cartridges, Model No. 2581, directly at plaintiff's decedent, JOHN WARNA, from a distance of approximately 6-8 feet when they knew or should have known that the shotgun cartridges' manufacturer specified the weapon was not to be discharged at a human being at a distance less than 15 feet; or

**ANSWER:**   Defendants deny the averments in paragraph 116(b).

c.       Wilfully and wantonly, recklessly and in conscious disregard of the known risks and consequences permitted, allowed and/or fired five rounds of bean bags in rapid succession from a shotgun expelling Super-Sock Orange Hull 12 Gauge Bean Bag Cartridges, Model No. 2581, directly at plaintiff's decedent, JOHN WARNA, from a distance of approximately 6-8 feet when they knew the terminal velocity of a single deployed bean bag cartridge is 280 feet per second, or approximately 190 miles per hour; or

**ANSWER:**   Defendants deny the averments in paragraph 116(c).

d.       Wilfully and wantonly, recklessly and in conscious disregard of the known risks and consequences permitted, allowed and/or fired five rounds of bean bags in rapid succession from a shotgun expelling Super-Sock Orange Hull 12 Gauge Bean Bag Cartridges Model No. 2581, directly at plaintiff's decedent, JOHN WARNA's thorax and abdomen; or

**ANSWER:**   Defendants deny the averments in paragraph 116(d).

e.       Wilfully and wantonly, recklessly and in conscious disregard of the known risks and consequences failed or refused to take into consideration Plaintiff's decedent, JOHN WRANA, JR., advanced age of nearly 96 years old, his smaller size of 5'5" and 160 pounds, his much weaker strength, his lack of skills, his exhaustion, the number of police officers available and present versus plaintiff's decedent, his agitated and confused mental state and that he had no history of a propensity for violence and permitted, allowed, and/or fired 5 rounds of bean bags in rapid succession from a shotgun expelling Super-Sock Orange Hull 12 gauge Bean Bag Cartridges, Model No. 2581, directly at plaintiff's decedent, JOHN WARNA's thorax and abdomen from approximately 6 to 8 feet away; or

**ANSWER:**   Defendants deny the averments in paragraph 116(e).

f.       Wilfully and wantonly, recklessly and in conscious disregard of the known risks and consequences failed or refused to de-escalate the situation involving plaintiff's decedent, JOHN WRANA, JR., when they knew or in the exercise of

reasonable care should have known that Mr. Wrana likely was suffering from a physical ailment that was causing him to exhibit a sudden onset of strange and uncharacteristic behavior; or

**ANSWER:**     Defendants deny the averments in paragraph 116(f).

g.     Wilfully and wantonly, recklessly and in conscious disregard of the known risks and consequences escalated the situation involving plaintiff's decedent, JOHN WRANA, JR., by physically moving in force into Mr. Wrana's small single room residence with multiple weapons and devices drawn and aimed at Mr. Wrana when they knew, or the exercise of reasonable care should have known, that their actions would threaten and further agitate Mr. Wrana; or

**ANSWER:**
         Defendants deny the averments in paragraph 116(g).

h.     Wilfully and wantonly, recklessly and in conscious disregard of the known risks and failed or refused to take into consideration the availability of other non-violent options and their possible effectiveness and failed to give JOHN WRANA, JR., sufficient opportunity to comply, including non-violent alternatives such as allowing Mr. Wrana to remain alone and undisturbed in his room until he tired and/or fell asleep, and/or allowing the senior assisted living facility staff members who knew Mr. Wrana to intervene to gain Mr. Wrana's cooperation, and/or allowing time for a family member and/or trained and qualified person(s) to come to the facility to gain Mr. Wrana's cooperation with a transport to a hospital; or

**ANSWER:**     Defendants deny the averments in paragraph 116(h).

i.     Wilfully and wantonly, recklessly and in conscious disregard of the known risks and consequences, failed to intercede to prevent the use of unreasonable force in the form of 5 rounds of bean bags being fired directly at plaintiff's decedent, JOHN WRANA, JR., from a shotgun expelling Super-Sock Orange Hull 12 Gauge Bean Bag Cartridges, Model No. 2581, at a distance of approximately 6 to 8 feet away when they knew the cartridge discharged at a speed of 280 feet per second, or approximately 190 miles per hour; knew the bean bags shots could cause death or inflict great bodily harm on Mr. Wrana; knew it was 9:00 p.m. at night and the decedent would soon tire and likely fall asleep if left undisturbed; knew there were personnel from the senior assisted living facility on the floor who could help de-escalate the situation; knew the decedent was nearly 96 years old and unable to move without assistance; knew the decedent was becoming increasingly agitated by the defendants' presence and threats; knew the decedent was likely suffering from a physical ailment that was causing or contributing to his agitation; knew there were non-violent methods to de-escalate the situation,

42

and knew there was no avenue for Mr. Wrana to escape his room past 5 armed
police officers; or

**ANSWER:**     Defendants deny the averments in paragraph 116(i).

     j.     Wilfully and wantonly, recklessly and in conscious disregard of the known risks
and consequences, used deadly force to subdue plaintiff's decedent, JOHN
WRANA, JR.; or

**ANSWER:**     Defendants deny the averments in paragraph 116(j).

     k.     Wilfully and wantonly, recklessly and in conscious disregard of the known risks
and consequences failed to properly train PARK FOREST police officers how to
safely and properly respond to situations including elderly senior citizens
suffering from emotional and physical ailments so as to prevent a dangerous and
potentially deadly escalation of the circumstances; or

**ANSWER:**     Defendants deny the averments in paragraph 116(k).

     l.     Willfully and wantonly, recklessly and in conscious disregard of the known risks
and consequences failed to properly supervise the PARK FOREST police officers
who responded to JOHN WRANA, JR.'s residence at the assisted living facility
on July 26, 2013, and their excessive use of force by those officers to subdue and
restrain JOHN WRANA, JR.; and thereby suffered, permitted and allowed the use
of such excessive force and, ultimately, deadly force.

**ANSWER:**     Defendants deny the averments in paragraph 116(l).

     117.     As a proximate result of one or more of the foregoing willful and wanton acts or

omissions by the defendants, and each of them, plaintiff's decedent, JOHN WRANA, JR.,

suffered serious personal injuries that resulted in his death on July 27, 2013, and the denial of his

civil rights.

**ANSWER:**     Defendants deny the averments in paragraph 117.

     118.     Plaintiff, SHARON MANGERSON, is the duly appointed Independent Executor

of the Estate of JOHN WRANA, JR., Deceased, pursuant to Order of court, and she brings this

action in that capacity pursuant to the Wrongful Death Act of the State Illinois, 740 ILCS 180/1

*et. seq.* Plaintiff's decedent, JOHN WRANA, JR., left surviving him his next of kin, each of whom suffered pecuniary losses, including a loss of his society and companionship, as a proximate result of his death, including: ANTHONY HOYT, his great-nephew; KATHLEEN HOYT, his great-niece; MICHAEL HOYT, his great-nephew; JOHN JOSEPH KRYGER, his nephew; ANN KRYGER, his niece; GAYLE KRYGER AUGER his niece; ROBERT KRYGER, his post-deceased nephew; CHRISTINE KRYGER, his great-niece; JOSEPH KRYGER III, his great-nephew; ERIC KRYGER, his great-nephew; DAVID LEROY BOUQUET, his nephew; CAROLYN LUNA SZAMOCKI, his niece; KRISTY SZAMOCKI AARON, his great-niece; KELLY SZAMOCKI, his great-niece; KENNETH SZAMOCKI, his nephew; and GARY ALAN WRANA, his great-nephew, and any other surviving next of kin who may exist but are still unknown.

**ANSWER:**     Defendants admit Plaintiff, Sharon Mangerson, is the duly appointed Independent Executor of the Estate of John Wrana, Jr., Deceased, pursuant to Order of court, and she brings this action in that capacity pursuant to the Wrongful Death Act of the State Illinois, 740 ILCS 180/1 *et. seq.* Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining averments in paragraph 118.


119.     Plaintiff, SHARON MANGERSON, is the duly appointed Independent Executor of the Estate of JOHN WRANA, JR., Deceased, pursuant to Order of court, and she brings this action in that capacity pursuant to the Wrongful Death Act of the State Illinois, 740 ILCS 180/1 *et. seq.*

**ANSWER:**     Defendants admit the averments in paragraph 119.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT X
### Illinois Law - Survival Action (ALL DEFENDANTS)

120.    Plaintiff re-alleges and incorporates herein by reference each and every paragraph

of this Second Amended Complaint as if fully restated herein.

**ANSWER:**    Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

121.    As a proximate result of one or more of the aforesaid willful and wanton acts and/or omissions of the defendants, and each of them, the plaintiff's decedent, suffered conscious pain and suffering and, had he survived, a cause of action would have accrued in his favor for such conscious pain and suffering and such action has thus survived his death.

**ANSWER:**    Defendants deny the averments in paragraph 121.

122.    Plaintiff, SHARON MANGERSON, is the duly appointed Independent Executor of the Estate of JOHN WRANA, JR., Deceased, pursuant to Order of court, and she brings this action in that capacity pursuant to the Illinois Wrongful Death Act, Chapter 70, Sections 1 & 2 of the Illinois Revised Statutes (1984).

**ANSWER:**    Defendants admit the averments in paragraph 122.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT XI
## Illinois Law - Battery Claim (ALL DEFENDANTS)

123.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

124.     As fully described above, defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer under the command and supervision of Chief of Police Butz knowingly and intentionally engaged in wilful and wanton conduct which constituted a battery upon JOHN WRANA, JR., in that they intentionally touched JOHN WRANA, JR., against his will and with excessive force.

**ANSWER:**     Defendants deny the averments in paragraph 124.

125.     As a proximate result of defendant police officers' unlawful physical contact, JOHN WRANA, JR., suffered severe physical injuries which caused his death by homicide.

**ANSWER:**     Defendants deny the averments in paragraph 125.

126.     Illinois law specifically provides that defendant VILLAGE OF PARK FOREST is required to make payments for any compensatory damages on any judgment for tort against any employee acting within the scope of their employment. Therefore, defendant VILLAGE OF PARK FOREST is liable as the principal for the tortious conduct of Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer under the command and supervision of Chief of Police Butz.

**ANSWER:**     Defendants admit the averments in paragraph 126.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT XII
### Illinois Law—Assault Claim (ALL DEDENDANTS)

127.    Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**    Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

128.    As fully described above, defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer under the command and supervision of Chief of Police Butz knowingly and intentionally unlawfully engaged in willful, wanton conduct which constituted an assault on JOHN WRANA, JR., in that their conduct placed Plaintiff's decedent, JOHN WRANA, JR., in apprehension of receiving a battery.

**ANSWER:**  Defendants deny the averments in paragraph 128.

129.    As a proximate result of defendant police officers' unlawful conduct and actions, JOHN WRANA, JR., suffered severe emotional trauma prior to his death by homicide.

**ANSWER:**    Defendants deny the averments in paragraph 129.

130.    Illinois law specifically provides that defendant VILLAGE OF PARK FOREST is required to make payments for any compensatory damages on any judgment for tort against any employee acting within the scope of their employment. Therefore, defendant VILLAGE OF PARK FOREST is liable as the principal for the tortious conduct of Commander Baugh,

47

Corporal Elliot, Taylor, Hoskins and Greer under the command and supervision of Chief of Police Butz.

**ANSWER:**  Defendants admit the averments in paragraph 130.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT XIII
## Illinois Law—Intentional Infliction of Emotional Distress Claim
## (ALL DEDENDANTS)

131.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

132.     As fully described above, defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer under the command and supervision of Chief of Police Butz knowingly, intentionally and unlawfully engaged in willful, wanton conduct which was extreme and outrageous and exceeded all bounds of human decency.

**ANSWER:** Defendants deny the averments in paragraph 132.

133.     The police officer defendants committed the actions and conduct set forth herein with the intent of inflicting severe emotional distress on Plaintiff's decedent, JOHN WRANA, JR., or knowing that there existed a high probability that their conduct would cause such distress.

**ANSWER:**  Defendants deny the averments in paragraph 133.

134.     As a proximate result of defendant police officers' unlawful conduct and actions, Plaintiff's decedent, JOHN WRANA, JR., suffered severe emotional distress, mental anguish,

anxiety attacks, fear and mental trauma prior to his death by homicide, resulting in the injury to his mind, body and nervous system, and having the personal knowledge that he was, in fact, in the process of dying from the shot gun wounds inflicted on his body by defendants.

**ANSWER:** Defendants deny the averments in paragraph 134.

135.    Illinois law specifically provides that defendant VILLAGE OF PARK FOREST is required to make payments for any compensatory damages on any judgment for tort against any employee acting within the scope of their employment. Therefore, defendant VILLAGE OF PARK FOREST is liable as the principal for the tortious conduct of Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer under the command and supervision of Chief of Police Butz.

**ANSWER:** Defendants admit the averments in paragraph 135.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

**COUNT XIV**
**Illinois Law—Civil Conspiracy (ALL DEDENDANTS)**

136.    Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:** Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

137.    As described more fully in the preceding paragraphs, the defendant police officers, acting in concert, conspired by concerted action to accomplish an unlawful means.

**ANSWER:** Defendants deny the averments in paragraph 137.

49

138.     In furtherance of the conspiracy, defendant officers committed overt acts and were otherwise willful participants in joint activity including, but not limited to, the homicide, unlawful seizure, intentional infliction of emotional distress and battery upon Mr. Wrana.

**ANSWER:**     Defendants deny the averments in paragraph 138.

139.     As a direct and proximate result of the defendant officers' conspiracy, plaintiff suffered damages, as are more fully alleged above.

**ANSWER:**     Defendants deny the averments in paragraph 139.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT XV
## Illinois Law -- *Respondeat Superior* (VILLAGE OF PARK FOREST)

140.     Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

141.     Defendants Chief of Police Butz, Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer, were at all relevant times, employed by and working for defendant VILLAGE OF PARK FOREST and acted in the scope of their employment as agents and representatives of VILLAGE OF PARK FOREST. Therefore, defendant VILLAGE OF PARK FOREST is liable as the principal for the tortious conduct of its agents and is liable for the actions and inactions committed as stated herein by Chief of Police Butz, Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer.

**ANSWER:**     Defendants admit Defendant Village of Park Forest is liable for the tortious conduct of its employees while acting in the scope of their employment as agents and representatives of Defendant Village of Park Forest. Defendants further admit at all relevant times Chief of Police Butz[1] and Defendants Baugh, Elliot, Taylor, Hoskins and Greer were acting within the scope of their employment. However, Defendants deny Defendants Baugh, Elliot, Taylor, Hoskins and Greer engaged in the conduct described in this Second Amended Complaint, deny Plaintiff is entitled to any relief and deny any remaining averments in paragraph 141.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

## COUNT XVI
### Illinois Law—Indemnification Pursuant to 735 ILCS 10/9-102
### (VILLAGE OF PARK FOREST)

142.    Plaintiff re-alleges and incorporates herein by reference each and every paragraph of this Second Amended Complaint as if fully restated herein.

**ANSWER:**     Defendants restate and incorporate herein by reference their answer to each and every paragraph of this Second Amended Complaint as if fully restated herein.

143.    Defendants, Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer, were at all relevant times, employed by and working for defendant VILLAGE OF PARK FOREST and acted in the scope of their employment as agents and representatives of VILLAGE OF PARK FOREST. Therefore, defendant VILLAGE OF PARK FOREST is liable as the principal for the tortious conduct of its agents and is liable for the actions and inactions committed as stated herein by defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer.

_____

[1]Chief Butz was voluntarily dismissed as a defendant from this case on October 23, 2014. (Dkt. 50.)

**ANSWER:**    Defendants admit Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer, were at all relevant times, employed by and working for defendant Village of Park Forest and acted in the scope of their employment as agents and representatives of Village of Park Forest. Defendants admit defendant Village of Park Forest is liable as the principal for the tortious conduct of its agents but Defendants deny they engaged in the actions and inactions set forth in Plaintiff's Complaint and deny Plaintiff is entitled to any relief.

144.    Defendant VILLAGE OF PARK FOREST is a municipal corporation within the meaning of 735 ILCS 10/9-102 for all actual damages caused by defendants, Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer, caused while acting in the scope of their employment with VILLAGE OF PARK FOREST.

**ANSWER:**    Defendants admit the averments in paragraph 144.

145.    Defendant VILLAGE OF PARK FOREST is liable to Plaintiff for an amount which shall compensate her as Independent Executor of the Estate of JOHN WRANA, JR., deceased, including but not limited to JOHN WRANA, JR.'s civil rights violations, wrongful death by homicide, survivorship rights, pain and suffering, emotional distress, battery, assault and other unlawful acts caused by the wrongful willful and wanton acts of defendants Commander Baugh, Corporal Elliot, Taylor, Hoskins and Greer. Accordingly, Plaintiff demands indemnification for any judgment entered in this matter arising from defendants' actions and inactions, plus costs, attorneys' fees, and any and all other relief that this Court deems just, fair, necessary and proper.

**ANSWER:**    Defendants admit Plaintiff demands indemnification for any judgment entered in this matter arising from defendants' actions and inactions, plus costs, attorneys' fees, and any and all other relief that this Court deems just, fair, necessary and proper but deny they engaged in the conduct alleged in Plaintiff's Complaint and deny Plaintiff is entitled to any relief whatsoever.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

Dated: November 3, 2014

RESPECTFULLY SUBMITTED,

/s/ **Elizabeth A. Ekl**
Elizabeth A. Ekl, 06242840
*One of the Attorneys for Defendants*

James G. Sotos
Elizabeth A. Ekl
Amy P. Engerman
**THE SOTOS LAW FIRM, P.C.**
550 East Devon, Suite 150
Itasca, Illinois 60143
Tel: (630) 735-3300
Fax: (630) 773-0980
eekl@jsotoslaw.com

## AFFIRMATIVE DEFENSES

Defendants, without prejudice to their denials and all other statements in this answer, assert the following affirmative defenses to Plaintiff's Second Amended Complaint:

1.      Defendants Michael Baugh, Craig Taylor, Lloyd Elliot, Charlie Hoskins and Mitch Greer are police officers, who perform discretionary functions.  At all times material to the events alleged in Plaintiff's Second Amended Complaint, reasonable police officers, objectively viewing facts and circumstances confronting the Defendant Officers during the incident alleged by Plaintiff, could have reasonably believed their actions were objectively reasonable and within the constitutional limits that were clearly established at the time.  Defendants are, therefore, entitled to qualified immunity.

2.      Defendants are not liable for claims alleged under state law because Defendants' action or non-action with respect to Plaintiff's Decedent, Mr. Wrana, was based upon the information and circumstances known to Defendants at the time and was discretionary, for which Defendants are immune from liability. 745 ILCS 10/2-201.

3.      Defendants are not liable for claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

4.      Defendants are not liable under state law for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

5.      To the extent Plaintiff and Mr. Wrana failed to mitigate any of Mr. Wrana's claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

6.     To the extent any injuries or damages claimed by Plaintiff was proximately caused, in whole or in part, by any wrongful conduct on the part of Plaintiff and/or her Decedent Mr. Wrana, any verdict or judgment obtained by Plaintiff on any of her claims brought under Illinois law and based on any finding of "reckless" willful and wanton behavior, as opposed to "intention" willful and wanton behavior, must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this case. *See Poole of City of Rolling Meadows*, 167 Ill.2d 41, 656 N.E.2d 768, 212 Ill. Dec. 171 (1995).

7.     Pursuant to 42 U.S.C. §1983, a municipality is not liable under a theory of *respondeat superior* for the constitutional violations of its employees. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997).

8.     To the extent any individual employees of the Village of Park Forest are not liable for acts as alleged in the Complaint, the Village is not liable. 745 ILCS 10/2-109.

9.     Defendant Village of Park Forest is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by an injured party or third party.  745 ILCS 10/2-102.

WHEREFORE, Defendants deny Plaintiff is entitled to any judgment whatsoever and pray this Honorable Court allow for the costs of defending this lawsuit.

Dated: November 3, 2014                    RESPECTFULLY SUBMITTED,

                                           /s/ **Elizabeth A. Ekl**          
                                           Elizabeth A. Ekl, 06242840
                                           *One of the Attorneys for Defendants*

## JURY DEMAND

Defendants hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: November 3, 2014

s/Elizabeth A. Ekl
ELIZABETH A. EKL, Attorney No. 06242840
*One of the Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on November 3, 2014, I electronically filed the foregoing **Defendants' Answer, Affirmative Defenses and Jury Demand to Second Amended Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the attached Service List:

/s/ **Elizabeth A. Ekl**
Elizabeth A. Ekl, 06242840
*One of the Attorneys for Defendants*

James G. Sotos
Elizabeth A. Ekl
Amy P. Engerman
**THE SOTOS LAW FIRM, P.C.**
550 East Devon, Suite 150
Itasca, Illinois 60143
Tel: (630) 735-3300
Fax: (630) 773-0980
eekl@jsotoslaw.com

***Attorneys for Plaintiff***
Nicholas G. Grapsas, Esq.
Nicholas G. Grapsas, LTD.
1622 Colonial Parkway, Suite LA
Inverness, IL. 60067
847-963-0100
847-496-4148 (fax)
nggsr@comcast.net

Alice E. Dolan, Esq.
Alice E. Dolan & Associates LLC
30 West Monroe Street, Suite 800
Chicago, Illinois 60603
312-386-1600
312-386-1616 (fax)
aed@dolanlaw.com

Paul D. Geiger
Law Offices of Paul D. Geiger
540 North Frontage Road, Suite 3020
Northfield, Illinois 60093
312-609-0060
pauldgeiger@gmail.com

Ronald C. Dahms
Law Offices of Ronald C. Dahms
135 South LaSalle Street, Suite 3300
Chicago, IL 60603
312-609-0060
rdahms81@yahoo.com