UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON MANGERSON, Independent Executor of the Estate of JOHN WRANA, JR., Deceased, <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF PARK FOREST, an Illinois Municipal Corporation, MICHAEL BAUGH, individually, CHARLES HOSKINS, individually, CRAIG TAYLOR, individually, LLOYD ELLIOT, individually, and MITCH GREER, individually, <br><br> Defendants. | Case No.  14 CV 4661 <br> Judge Amy J. St. Eve <br> Magistrate Jeffrey T. Gilbert |

## <u>PLAINTIFF'S MOTION TO DISQUALIFY AND STRIKE THE APPEARANCES OF TERRY A. EKL, TRACY STANKER AND EKL, WILLIAMS & PROVENZALE LLC</u>

Plaintiff, SHARON MANGERSON, as Independent Executor of the Estate of JOHN WRANA, JR., Deceased, by and through her attorneys, respectfully moves this Court for an Order disqualifying attorneys Terry A. Ekl ("Ekl") and Tracy Stanker ("Stanker") and to strike their appearances, and the appearance of any attorney from the firm of Ekl, Williams & Provenzale LLC. In support of her motion, Plaintiff states:

### I. INTRODUCTION

1. On October 2, 2015, over 14 months after this matter was filed, and over 13 months after counsel for defendant Hoskins appeared on his behalf, attorneys Ekl and Stanker of the firm of Ekl, Williams & Provenzale LLC. have now filed appearances in this case on behalf of defendant Hoskins. However, their appearances are in conflict with

1

Plaintiff's interests and privileges. Plaintiff has not and does not waive those conflicts. Consequently, Ekl and Stanker should be disqualified and their appearances should be stricken, as well as the appearance of any attorney from the Ekl firm, for the following reasons:

## II. FACTUAL BACKGROUND

2. After Plaintiff retained Nicholas G. Grapsas, and Nicholas G. Grapsas, Ltd. ("Grapsas") to represent her with respect to the events in this case, Grapsas personally met and consulted with Ekl at his offices at the firm of Ekl, Williams & Provenzale LLC, located at 901 Warrenville Road, Lisle, Illinois regarding the filing and prosecution of ***this case***. This meeting occurred on August 2, 2013, at approximately 10:30 a.m. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 1).

3. The specific purpose of the consultation was twofold. First, Grapsas met with Ekl on behalf of Plaintiff in order to gain Ekl's professional legal advice, recommended strategy and suggestions related to the investigation, discovery and prosecution of civil claims against the Village of Park Forest and its police officers who were responsible for the death of plaintiff's decedent, John Wrana, Jr. based upon information that Grapsas shared with Ekl during their meeting, and which Grapsas discovered through a preliminary investigation. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 2).

4. The second purpose for meeting with Ekl was to explore the prospect of retaining Ekl's legal services in jointly representing plaintiff with Grapsas ***in this case***

against defendant Park Forest and its individual defendant officers. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 3).

5. In response to the facts and information that Grapsas shared with Ekl, Grapsas was advised by Ekl regarding, among other things, (1) recommended steps to take in investigating the actions of the Park Forest police officers who killed Mr. Wrana, (2) the recommended judicial forum in which to file an action against them, (3) the recommended nature of the action, the legal theories upon which to include in that action against Park Forest and the defendant police officers, and (4) the recovery of attorneys' fees against defendants. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 4).

6. Additionally, Grapsas and Ekl discussed the prospect of jointly representing Plaintiff Sharon Mangerson against defendant Park Forest and its individual defendant police officers in this case. Ekl advised Grapsas, among other things, of the following:

(a) Ekl's belief as to how defendant Village of Park Forest would likely proceed with respect to settlement of Plaintiff's claims;

(b) Ekl's belief as to the settlement value of plaintiff's claims;

(c) Ekl's recommendation that he not be retained until and unless there was no settlement and the matter needed to go to court;

(d) Ekl's fee structure requirement in the event an action needed to be filed, and he were retained by Plaintiff to represent her jointly with Grapsas in this case; and

(e) Ekl's agreement to consult with Grapsas in drafting the complaint in this case against defendants, if Grapsas so requested.

(See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 5).

7. Furthermore, after that meeting, Grapsas spoke to Ekl by telephone with follow-up questions related to strategy and procedure concerns that he had for this case. Plaintiff, Sharon Mangerson, was advised of the conference with Ekl prior to and with the results of the conference after the consultation. This included the fact that if this matter ultimately went to court, Ekl would be retained to jointly represent her in this case. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 6).

8. On March 31, 2014, Grapsas coincidentally met and then briefly spoke to Ekl in the second floor cafeteria at the Cook County Criminal Courts Building at 2650 S. California Avenue, Chicago, Illinois. Grapsas then briefly summarized the status of his investigation of Mr. Wrana's homicide and shared his future intentions, including his time frame in filing a civil rights action in the matter. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 7).

9. The following day, April 1, 2014, Grapsas was contacted by Assistant State's Attorney William Delaney of the Cook County State's Attorney's Office. A.S.A. Delaney advised Grapsas that criminal charges were being filed the next day, April 2, 2014, in connection with the homicide of John Wrana, Jr. against defendant Police Officer Craig Taylor. Defendant Taylor is the shooter among the individual defendant officers who killed Plaintiff's decedent, Mr. Wrana. At that same time, A.S.A. Delaney advised Grapsas that Ekl was representing defendant Craig Taylor in that criminal case. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 8). Neither Plaintiff nor Grapsas, on her behalf, received any other notice or communication that Ekl was acting as

defendant Craig Taylor's attorney relative to the homicide of Plaintiff's decedent, John Wrana, Jr. (*Id.*).

10. On April 2, 2014, Ekl appeared in court on behalf of defendant Taylor at the initial appearance and bond hearing of Taylor's criminal prosecution. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 9) Plaintiff never waived or consented to any conflicts which exist as a result of these events, nor was she, or her attorney, Grapsas, ever contacted with respect to the issue of any such consent or waiver. (See, Exhibit A, *Affidavit of Nicholas G. Grapsas,* at ¶ 10). Indeed, Plaintiff continues to preserve her privileges with respect to Ekl and does not waive any conflict. (Id.)

11. Accordingly, Grapsas contacted Cook County State's Attorney Anita Alvarez the following day, on April 3, 2104, (with copy to Ekl), advising her of the events which gave rise to Plaintiff's privileges with respect to Ekl and stated that "[o]ur client is not waiving any conflicts which may exist as a result of these events." (See Exhibit B)

12. Thereafter, the Cook County State's Attorney's Office filed its *State's Petition for Court Inquiry into Potential Conflict of Defense Counsel* in the criminal proceeding in which it sought a determination of the question of Ekl's conflict as a result of Ekl's involvement with Plaintiff Sharon Mangerson. The State's petition specifically called for the following relief in its prayer which states:

> In the event that this court finds a prior attorney-client relationship existed between counsel and the Estate of John Wrana, the People request that counsel be disqualified from the case, or in the alternative that the Defendant voluntarily waive his right to conflict-free representation on the record.

(See, Exhibit C, at p. 8) On July 1, 2014, the State's petition came before the criminal court for hearing and the prosecutor stated:

> [PROSECUTOR]: We are not calling any witnesses based on the representation that the defendant is under oath and knowingly waive [sic] any conflict.

Defendant Taylor was then sworn under oath and the Court inquired of him and he responded as follows:

> THE COURT: Mr. Taylor, it is my understanding that you are waiving any possible conflict that may arise as a result of your representation by Mr. Ekl.
>
> DEFENDANT: Yes.

The Court then made the following ruling on the State's Petition:

> THE COURT: Based on that representation, the court finds that there is no conflict and Mr. Ekl is allowed to proceed with the representation of the defendant.

(See Exhibit D, at pp. 2-3, Transcript of Proceedings in the matter of the *People of the State of Illinois v. Craig Taylor*, 14 CR 6867, July 1, 2014)

13. The criminal court had defendant Taylor affirmatively and knowingly waive any possible conflicts arising from Ekl's representation in that proceeding. The waiver was obtained by the only party with which that court was legally concerned – defendant Taylor.

14. The State's and the criminal court's interest in resolving any conflict in the criminal proceeding was considered and resolved only within the context of the criminal defendant's Sixth Amendment Constitutional right to conflict-free representation as it relates to the effective assistance of counsel. The criminal proceeding was unconcerned

6

with the rights, privileges and duties owed to Plaintiff in this civil case, despite the fact that they relate to the same incident and individuals about which Ekl was consulted by Grapsas on Plaintiff's behalf.

15. However, the conflict created by the recently filed Ekl firm appearances is a *per se* conflict and cannot be waived merely by defendant Hoskins in this the same case in which Ekl was consulted on Plaintiff's behalf, as it was by defendant Taylor in his criminal case. Here, Plaintiff is a direct adversary to Ekl's purported client, and even assuming, *arguendo* if the conflict were not *per se*, Plaintiff's consent and waiver are required to expunge Ekl's conflict. This Court is now confronted with that conflict which Ekl alone creates.

### III. ARGUMENT

A. <u>Ekl Is Barred By Conflict From Appearing for Hoskins In This Case.</u>

16. In calling for defendant Taylor's waiver, the criminal court recognized the possibility of the conflict's existence. It is axiomatic that a party cannot waive a claim that does not exist. The Seventh Circuit Court of Appeals has opined that:

> There are several fairly common situations where, although there is no express attorney-client relationship, there exists nevertheless a fiduciary obligation or an implied professional relation:
>
> (1) The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result.

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978) The court of appeals further stated that "[t]he professional relationship for attorney-client

7

communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek legal advice.'" (Id)

17. In this case, the facts clearly establish that when Grapsas, on behalf of Plaintiff as her attorney, personally consulted and also called Ekl about legal advice, he also did so with a view towards retaining Ekl on Plaintiff's behalf in prosecuting ***this case***. (See, Exhibit A) Therefore, a fiduciary obligation or an implied professional relationship was created even though Ekl was never retained by Plaintiff. As a result any representation on behalf of Hoskins is prohibited by conflict with Plaintiff.

B. <u>The subject matter in in this case is substantially related.</u>

18. Moreover, Ekl is further prohibited from appearing in this case on behalf of defendant Hoskins because the subject matter in this case is substantially related (in fact, identical) to the fiduciary relationship created between Ekl and Plaintiff. The Seventh Circuit has also held that:

> a lawyer may not represent an adversary of his former client if the subject matter of the two representations is "substantially related," which means: if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second. It is irrelevant whether he actually obtained such information and used it against his former client, or whether--if the lawyer is a firm rather than an individual practitioner--different people in the firm handled the two matters and scrupulously avoided discussing them.

*Analytica, Inc. v. NPD Research, Inc.*, 708 F2d 1263 (7th Cir. 1983). [citations omitted] In *Analytica,* Judge Posner further wrote that "[i]f the 'substantial relationship' test applies, however, 'it is not appropriate for the court to inquire into whether actual confidences were disclosed,' *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d [221]

at 244 [7th Cir. 1978] . . ." Therefore, whether Ekl actually learned of confidential information pertaining to Plaintiff is irrelevant to this Court's determination of the conflict issue. See, also: *Genova v. Kellogg*, 12 C 3105, (Memorandum Opinion, * 6, November 21, 2012, Kocoras, J.) (whether attorney actually learned of confidential information pertaining to the [adverse party] is irrelevant to determining disqualification).

WHEREFORE, for these reasons, Plaintiff Sharon Mangerson, respectfully requests that this Court enter an order: (1) disqualifying attorneys Terry A. Ekl ("Ekl") and Tracy Stanker ("Stanker") in this case, (2) striking their appearances, (3) disqualifying and striking the appearance of any attorney from the firm of Ekl, Williams & Provenzale LLC., and (4) for any and all relief that this Court deems proper and necessary.

        Respectfully submitted,

        SHARON MANGERSON, Independent Executor of the
        Estate of JOHN WRANA, JR., Deceased,

        By:   /s/ Nicholas G. Grapsas
              One of Her Attorneys

Nicholas G. Grapsas, Esq.
Nicholas G. Grapsas, LTD.
1622 Colonial Parkway, Suite LA
Inverness, Illinois 60067
847-963-0100
847-496-4148 (Fax)
nggsr@comcast.net

## CERTIFICATE OF SERVICE

Nicholas G. Grapsas, an attorney, certifies that on October 5, 2015, we filed and served the aforementioned:

**PLAINTIFF'S MOTION TO DISQUALIFY AND STRIKE THE APPEARANCES OF TERRY A. EKL, TRACY STANKER AND EKL, WILLIAMS & PROVENZALE LLC**

with the Clerk of Court's Electronic Filing System, and with a true and correct copy of which was served upon:

| | |
|---|---|
| James G. Sotos, Esq. | Terry Ekl |
| Elizabeth A. Ekl, Esq. | Tracy Stanker |
| Jaclyn McAndrew, Esq. | Ekl, Williams & Provenzale LLC |
| Joseph M. Polick, Esq. | 901 Warrenville Road, Ste. 175 |
| Amy P. Engerman, Esq. | Lisle, IL. 60532 |
| THE SOTOS LAW FIRM, P.C. | |
| 550 East Devon Avenue, Suite 150 | |
| Itasca, Illinois 60143 | |

/s/ Nicholas G. Grapsas