SHARON MANGERSON, Independent Executor
of the Estate of JOHN WRANA, JR., Deceased,

                Plaintiff

    v.                                            Case No. 14 CV 4661

VILLAGE OF PARK FOREST, *et al.*,

                Defendants.

## PLAINTIFF'S MOTION TO DISQUALIFY AND STRIKE THE APPEARANCES OF TERRY A. EKL, TRACY STANKER AND EKL, WILLIAMS & PROVENZALE LLC

# EXHIBIT C

```
STATE OF ILLINOIS    )
                     )  SS
COUNTY OF COOK       )
```

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CRIMINAL DIVISION

```
PEOPLE OF THE STATE OF ILLINOIS   )
                                  )           FILED
                                  )                D-6
        vs.                       )  CASE NO: 14 CR 8867A 2014
                                  )           DOROTHY BROWN
                                  )        CLERK OF THE CIRCUIT COURT
CRAIG TAYLOR                      )            OF COOK COUNTY, IL
                                  )
```

### State's Petition for Court Inquiry into Potential Conflict of Interest of Defense Counsel

Now come the PEOPLE OF THE STATE OF ILLINOIS, by their Attorney, ANITA ALVAREZ, State's Attorney of Cook County, through her Assistant, Clarissa Palermo and respectfully request this Honorable Court to conduct an Inquiry into Potential Conflict of Interest for Defense Counsel, and in support thereof, state the following:

1. In the instant matter, the defendant is charged by way of indictment with the offense of Reckless Conduct in violation of 720 ILCS 5/12-5(a)(2) of the Illinois Compiled Statutes. As an additional aggravating factors for sentencing, the indictment also alleges that the

State shall seek and extended term sentence in that the victim, John Wrana, was a person 60 years of age or older at the time of the offense

2. The People have learned the following information with respect to a possible conflict of interest which defense counsel may suffer:

   a. Attorney NICHOLAS G. GRAPSAS represents the Executor of the Estate of John Wrana. According to Mr. GRAPSAS, his representation encompasses the investigation of the death of Mr. Wrana and pursuit and prosecution of any and all civil claims on behalf of the Estate against all persons liable for the death of Mr. Wrana, including the defendant, Craig Taylor.

   b. According to Mr. GRAPSAS prior to April 2, 2014, he had conferred with and consulted with Mr. Ekl on behalf of his client, Sharon Mangerson, (Mr. Wrana's then caretaker, stepdaughter and designated executor of his will and eventual Court-Appointed Independent Executor of his Estate).

   c. On August 2, 2013, at approximately 10:30 a.m., Mr. Grapsas personally met and consulted with Mr. Ekl at the law offices of Mr. Ekl at 901 Warrenville Road, Lisle, Illinois. The specific purpose of the consultation was to inform him of and share the facts and information that Mr. Grapsas had then discovered through his own investigation and interviews, and to have Mr. Ekl recommend strategy related to the investigation, discovery and prosecution of

civil claims against the Village of Park Forest and its police officers, for the death of John Wrana.

d. After Mr. Grapsas shared the facts that he had obtained from his investigation of the circumstances surrounding the death of John Wrana by Park Forest police, Mr. Ekl advised Mr. Grapsas as to, among other things, (1) steps to take in investigating the actions of the Park Forest police officers who killed Mr. Wrana, (2) the recommended judicial forum in which to file an action against them, and (3) the recommended nature of the action and the legal theories upon which to bring that action against Park Forest and the police officers, as well as the recovery of attorneys' fees against them.

e. Additionally, according to Mr. Grapsas, he also discussed joint representation together with Mr. Ekl on the Estate's behalf against Park Forest and its police officers. Mr. Ekl stated that it was his belief that the Village of Park Forest would likely seek to settle any claims with the Estate early and recommended that he not be retained until and unless there was no settlement and the matter needed to go to court. Mr. Ekl stated that in that event, he would require an arrangement of a 50% split of all attorneys' fees which would later be considered against the availability of attorneys' fees recoverable pursuant to federal statute (42 U.S.C.§1988) if he were to join Mr. Grapsas in representing the Wrana Estate against Park

Forest and its police officers. He further agreed to consult with Mr. Grapsas in his drafting of a federal section 1983 complaint against the village and the officers if Mr. Grapsas so requested.

f. Subsequent to that meeting, Mr. Grapsas spoke to Mr. Ekl by telephone with follow-up questions related to federal section 1983 strategy and procedure at least once.

g. Sharon Mangerson was advised by Mr. Grapsas of the results of the meeting that occurred between Mr. Grapsas and Mr. Ekl, including the fact that if this matter ultimately went to court, Mr. Ekl would be retained to jointly represent her as the executor of the Estate against Park Forest and its officers.

h. On March 31, 2014, Mr. Grapsas coincidentally met, and then briefly spoke to, Mr. Ekl in the second floor cafeteria at the Cook County Criminal Courts Building at 2650 S. California Avenue, Chicago, Illinois. Mr. Grapsas briefly summarized the status of his investigation and his future intentions and time frame in bringing an action in the civil case.

i. On April 1, 2014, Mr. Grapsas was advised by the Cook County State's Attorney's Office that criminal charges were being filed against Police Officer Craig Taylor on April 2, 2014, in connection with the homicide of John Wrana. On that same date, Mr. Grapsas was advised by an Assistant State's Attorney that Mr. Ekl represented defendant Craig Taylor in that case.

3. An attorney may suffer from a conflict of interest based upon his prior representation of a co-defendant, a victim or a witness who testifies at trial. Further, an attorney may have a conflict of interest if he previously worked as a prosecutor that personally worked on one of these unlawful death cases. See e.g. People v. Spreitzer, (1988) 123 Ill. 2d 1, 535 N.E.2d 30.

4. The People wish to avoid any potential conflict of interest which may impair the defendant's right to effective assistance of counsel. Further, the People wish to ensure that any conviction arising out of this case is not subject to reversal based upon an attorney's conflict of interest.

5. Where a convicted defendant alleges his attorney was ineffective due to a conflict of interest, he will normally be required to establish that he suffered actual prejudice as a result of the alleged conflict. See e.g. People v. Taylor, 237 Ill 2d 356 (2010). The defendant need not prove that the outcome of the trial would have been different. Rather the defendant need only show that his attorney suffered from an actual conflict of interest and "point to some specific defect in his counsel's strategy tactics, or decision making attributable to the conflict." Taylor, 237 Ill. 2d at 376.

6. However, in certain circumstances the conflict is deemed *per se* and the prejudice will be presumed. In People v. Fields, 409 Ill. App. 3d 398 (2012), the Illinois Appellate Court summarized the categories of *per se* conflict as follows:

> "the (Illinois) supreme court has identified three situations where a *per se* conflict exists. See *People v. Taylor*, 237 Ill. 2d 356, 930 N.E.2d 959, 341 Ill. Dec. 445 (2010); *People v. Hernandez*, 231 Ill. 2d 134, 896 N.E.2d 297, 324 Ill. Dec. 511 (2008). First, the court has found a *per*

se conflict where 'defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution.' *Taylor*, 237 Ill. 2d at 374; *Hernandez*, 231 Ill. 2d at 143. The court has also found a *per se* conflict where defense counsel contemporaneously represented a prosecution witness and where defense counsel was a former prosecutor who had been personally involved in the prosecution of the defendant. *Taylor*, 237 Ill. 2d at 374; *Hernandez*, 231 Ill. 2d at 143."

Fields, 409 Ill. App. 3d at 401 (rev'd. People v. Fields 2012 IL 112438, 980 N.E. 2d 35 (2013).

7. As set forth above, the *per se* rule is at its broadest when the attorney has previously represented a victim of the crime for which defendant stands trial. In such a case, the timing of the prior representation does not appear to matter. In People v. Hernandez, 231 Ill. 2d 134 (2008), the Illinois Supreme Court stated:

> "we find that to ensure that a defendant's right to effective assistance of counsel is given effect, the *per se* conflict rule applies whenever an attorney represents a defendant and the alleged victim of the defendant's crime, regardless of whether the attorney's relationship with the alleged victim is active or not, and without inquiring into the specific facts concerning the nature and extent of counsel's representation of the victim." Hernandez, 231 Ill. 2d at 151-52.

8. The People are aware of at least two other Cook County cases in which convicted defendants have filed post-conviction petitions alleging a *per se* conflict of interest based upon a defense attorney's representation of a murder victim which concluded years prior to the murder. See e.g. *People v. Cleveland*, 2012 Ill App. (1st) 101631, 367 Ill. Dec. 145. *People v. Whitmore* 97 CR 1526002 (post

conviction petition granted 2-20-2014 (appeal pending)). While the People believe that there was no *per se* conflict of interest in those cases, the ultimate issue has not yet been resolved by a final court of review.

9. "Unless a defendant waives his or her right to conflict-free representation, a *per se* conflict of interest is grounds for automatic reversal." People v. Taylor, (2010) 237 Ill. 2d 356, 374; 930 N.E.2d 959. (citations omitted).

10. With the above principles in mind, the People have attempted to determine whether the attorney currently representing the defendant in this matter, Terry Ekl, has a conflict of interest in this case based on his involvement in representing Mr. Wrana's Estate.

11. In addition, in a newspaper article written about this case prior to indictment, Terry Ekl is quoted as saying "an involuntary manslaughter charge would be appropriate if, among other things, 'the acts which result in death are done in a reckless fashion.'" (John Kass, *State's Attorney, Someone, Needs to Take Stand on WWII Veteran's Death*, Chicago Tribune Jan. 30, 2014).

12. The People acknowledge that a defendant has a limited right to counsel of his choice under the Sixth Amendment. Nevertheless, this right is not absolute and in the appropriate circumstances will be negated by a showing that counsel has a conflict of interest. At a minimum, the defendant should be informed of the potential for conflict of interest that his attorney may have, including a *per se* conflict, and should either make a knowing waiver of his right to conflict-free representation or his attorney should be disqualified. See e.g. People v. Taylor, (2010) 237 Ill. 2d 356, 375 "Unless a defendant waives his or her right to conflict-free representation, a *per se* conflict of interest is grounds for automatic reversal."

(citations omitted)." People v. Spreitzer (1988) 123 Ill. 2d 1, 15 a conviction must be reversed if the defense attorney suffers from a *per se* conflict "unless the record reflects that the defendant has been made aware of the conflict and has knowingly waived his right to conflict-free counsel." (See also People v. Fife (1979) 76 Ill. 2d 418, 425 "we believe that problem is nullified or significantly lessened by complete and effective disclosure, by effective, knowledgeable waiver, and by the fact that special assistants are engaged in [***10] duties of a noncriminal nature and of specifically defined scope, wholly unrelated to their private employment. See Professional Ethics Opinion No. 335, 59 Ill. B.J. 333 (1970), and No. 374, 60 Ill. B.J. 664 (1972)."

Wherefore, the People request that defense counsel state on the record the extent of any prior attorney client relationship he may have had with the Estate of John Wrana. In the event that this court finds a prior attorney-client relationship existed between counsel and the Estate of John Wrana, the People request that counsel be disqualified from this case, or in the alternative that the Defendant voluntarily waive his right to conflict-free representation on the record.

Respectfully Submitted,

_Clarissa Palermo_

By: Clarissa Palermo
Assistant State's Attorney